## VIOLET BOGY MOSELEY v. BERNARD P. BOGY et al; BERNARD P. BOGY, Appellant.

### In Banc, December 1, 1917.

1. **CURTESY: In Property Devised by Will.** If the wife's will gives an undivided half interest in fee simple in her property to her husband, and the other undivided half interest to their children in fee simple, the husband is put to his election as to whether he

will claim under the will or claim his curtesy devolved upon him by operation of law. The two claims are inconsistent, and he cannot have a half in fee simple, and a curtesy in the other half. *Held*, by WILLIAMS, J., dissenting, that the intention to exclude the husband from his legal right to curtesy must be clearly expressed; if it is doubtful, he is not excluded.

2. **WILL: Devise to Husband: Fee Simple Exclusive of Curtesy.** The first clause of the will read: "Should I die leaving surviving me my husband and a child or children, then it is my will that my whole estate, real and personal, be divided between my husband and children, in the proportion of one-half to my husband and one-half to my child or children." The third clause read: "Should I die leaving surviving me neither husband nor children, then and in such event I give, devise and bequeath my whole estate, both real and personal, to my mother, Anne E. Griffith." *Held*, that testatrix's intention was to devise to her husband a half interest in fee simple in her entire property, and a half interest in fee simple to her children, and not to devise the real estate subject to the husband's curtesy, even though the will by its terms does not attempt to dispose of his curtesy. The word "estate" did not mean the interest she had in the property, but meant the property itself; and that view is enforced by the third clause, which uses the same words to describe the property and gives her "whole estate, real and personal" to her mother, in case neither husband nor children survived her, it being clear that she intended to give a vendible fee simple title to her mother in such event.

*Held* (by GRAVES, C. J., concurring) that the same view is further enforced by the second clause of the will by which testatrix declared that in case of her death leaving her husband surviving, but no child or children, her "whole estate, real and personal" is given in equal parts to her husband and mother, thereby making it clear that she did not intend to make the real estate given to her mother subject to the husband's lifetime enjoyment.

*Held*, by WILLIAMS, J., dissenting, that the husband had an estate or interest in the lands at the time the will was made, and the will by its very terms includes everything that was hers and excludes everything else; and there being no clearly expressed intention to exclude the husband's curtesy, he was not put to his election, but was entitled to hold both his estate by the curtesy and the half interest in the remainder devised to him by the will.

3. ———: **Election: By Putting Will Into Effect.** The husband, to whom his wife's will gave one half her property in fee simple, by presenting the will to the probate court and making the usual affidavit, by applying for letters testamentary and qualifying as executor, by filing an inventory of the estate and swearing to same,

in which he set forth the real estate and listed no personal property, by his final settlement reporting that there was no personal property for distribution and being discharged, by receiving a benefit under the will which gave to him a vendible fee simple title to one half of testatrix's property, and by thus deliberately putting the will into effect with full knowledge of his rights under it and of all the property affected by its provisions, elected to take under the will, and cannot now elect to renounce it and take his curtesy in the entire estate.

*Held*, by GRAVES, C. J., concurring, that a letter addressed to his daughter's lawyer in which he stated that at the time the will was probated he was informed by the court that he had "a fee simple in one half and a curtesy in the other half, as there were no conditions attached to the acceptance of the one half left me absolutely," further shows that he was claiming under the will, one half the estate in fee simple and the other half for life, and manifested his election to take under the will.

*Held*, by WILLIAMS, J., dissenting, (1) that the act of the husband in presenting the will for probate and acting as executor thereunder does not, in itself, constitute an election to claim under the will, and the fact that he was informed by the probate court when he presented the will for probate that he was entitled to one-half the estate in fee simple and to curtesy in the other half nullifies any inference of an election that may be otherwise drawn from qualifying as executor under the will; (2) that the fact that he claimed both curtesy and under the will does not of itself amount to an election to take under the will and relinquish his curtesy; and (3) that if the facts show an election they show an election to take the curtesy and not under the will, since he never received any property under the will, and there was no personalty, there has been no change in the ownership or possession of any of the realty since testatrix's death, and he has claimed to be collecting the rents by right of his curtesy.

Appeal from St. Louis City Circuit Court.—*Hon. Rhodes E. Cave*, Judge.


AFFIRMED.


*S. T. G. Smith* for appellant.

(1) A married woman cannot by will dispose of her real property except subject to the rights of the husband to his curtesy therein. Sec. 536, R. S. 1909. (2) Where

272 Mo.—21

a man and woman are married and issue capable of inheriting is born of said marriage, the husband, by operation of law, immediately becomes vested of a freehold estate in all real property of which the wife was seized at the time of her death. Myers v. Hansbrough, 202 Mo. 495; Donovan v. Griffith, 215 Mo. 149; Kennedy v. Koopman, 166 Mo. 87; Fitzgerald v. Brennan, 57 Conn. 743; Foster v. Marshall, 22 N. H. 491; In re Folwell's Estate, 59 Atl. (N. J.) 467. (3) A provision in a will of a wife in favor of her husband will never be presumed to be in lieu of curtesy unless such a design is unequivocally expressed. Bryant v. Buford, 49 Mo. 546; Hasenritter v. Hasenritter, 77 Mo. 162; Richardson v. DeGiverville, 107 Mo. 422; Burnley v. Thomas, 63 Mo. 392; Pemberton v. Pemberton, 29 Mo. 408; 1 Jarman on Wills (6 Ed.), p. 547. (4) Where a testatrix owns a partial interest in real estate and devises the "whole of my estate," all that passes by her will is that part of the fee simple which is left in the testatrix by the law after the curtesy right of the husband has been cut out of the fee simple, and such a devise does not convey, or attempt to convey, the curtesy right of the husband. Myers v. Hansbrough, 202 Mo. 495; Donovan v. Griffith, 215 Mo. 149; Pratt v. Douglas, 38 N. J. Eq. 510; Penn v. Guggenheimer, 76 Va. 839. (5) Where a testatrix has only a partial interest in real estate and in her will employs general words in disposing of same, such as "my whole estate," "all my lands," "all my estate," no case of election arises which requires a devisee holding a part of the property to elect whether he will take under the will or keep what he already has. Keas v. Gross, 92 Mo. 647; Penn v. Guggenheimer, 76 Va. 839; Tony v. Spragins, 80 Ala. 541; Charch v. Charch, 57 Ohio St. 561; Pratt v. Douglas, 38 N. J. Eq. 510; 1 Pomeroy on Eq. Jur., sec. 473. (6) The word "my" in a will used to describe property disposed of is expressive of restriction to the extent of the interest of the testator only. Sauvage v. Wanhop, 143 S. W. (Tex.) 259; Emery v. Haven, 67 N. H. 505; Estate of Mumford, 1 Myrick Prob. R. 134; Thomas v. Blair, 111 La. Ann. 683. (7) If the

court should find that this case is a case for an election, it appearing that the appellant Bernard P. Bogy has never exercised his right of election, then he is still entitled to elect as to which he will take, his curtesy right, or the half given by the will of his wife, Eleanor M. Bogy. Pratt v. Douglas, 38 N. J. Eq. 510; Shuster v. Morton, 187 S. W. (Mo.) 2; Stone v. Cook, 179 Mo. 534.

*Arthur G. Moseley* and *W. W. Herron* for respondent.

(1) The action for partition in this case should be sustained, although it might be held that the defendant has title by curtesy. R. S. 1909, sec. 2559; Atkinson v. Brady, 114 Mo. 202. (2) The rules of law with reference to curtesy and dower are closely analogous in this State, and a construction placed upon the rights of the party in the one instance will, when it can be done, be placed upon the rights of the party in the other. R. S. 1909, secs. 120, 360, 361, 535, 536; Teckenbrock v. McLaughlin, 246 Mo. 717; Moore v. Hurd, 76 Kan. 826; Everett v. Kresky, 92 Iowa, 333. (3) Estates given by will are always regarded as vesting immediately unless the testator has clearly manifested an intention that they should be contingent upon a future event. Schofield v. Allcott, 120 Ill. 374. An intervening life estate in one of the donees was not contemplated by the testatrix making this will, and consequently not intended by her; an intervening life estate would delay the enjoyment of the provisions made in the will for the benefit of the three donees and cannot but be antagonistic to the provisions of the will and the intention of the testatrix as shown thereby. (4) Where the surviving husband who otherwise would be entitled to a curtesy in the lands of his deceased wife is left a part of her lands in the will, he is obliged under the law to elect whether or not he will take under the will or under the law, for he cannot take under both. Casler v. Gray, 159 Mo. 595; Young v. Boardman, 79 Mo. 186; Stone v. Cook, 179 Mo. 534, 64 L. R. A. 287; Fox v. Windes, 127 Mo. 511, 48 Am. St. 648; 1 Woerner, Am. Law of Adm. (2 Ed.), p. 500; Wood v. Trust Co., 265 Mo. 511; Schuster

v. Morton, 187 S. W. (Mo.) 2; Clark v. Clark, 132 Ind. 25; Robertson v. Schard, 142 Iowa, 500; Clark's Appeal, 79 Pa. St. 377; McBride's Estate, 81 Pa. St. 305; Severson v. Severson, 68 Ohio, 656; Aschenford v. Chapman, 81 Kan. 312; Pearson v. Darrington, 32 Ala. 240; Allen v. Boomer, 82 Wis. 371; McReynolds v. Jones, 30 Ala. 101. (5) The will must be accepted as a whole. The donee cannot accept the part that is in his favor and reject the portion that may be against him. Wood v. Trust Co., 265 Mo. 211; Stoeckler v. Silberberg, 220 Mo. 270; Davidson v. Davis, 86 Mo. 444; O'Brien v. Ash, 169 Mo. 300; Cunningham v. Cunningham, 30 W. Va. 604; Stone v. Cook, 179 Mo. 534; Ditch v. Sennott, 117 Ill. 367. (6) The appellant by his acts in probating the will, qualifying under it as executor, as well as by other conduct with reference thereto, elected to take under the will, and now cannot relinquish. Davidson v. Davis, 86 Mo. 440; Allen v. Allen, 124 N. C. 334; Allen v. Boomer, 82 Wis. 372; Smith v. Wells, 134 Mass. 11; Mitchell v. Vest, 136 N. W. (Iowa) 1055; Craig v. Conover, 80 Iowa, 358; In re Frank's Estate, 66 N. W. 919; Appeal of Coe, 64 Conn. 352; In re Melot's Estate, 231 Pa. 520; Hyde v. Baldwin, 17 Pick. (Miss.) 307; Weeks v. Patten, 18 Me. 47; Martin v. Battey, 87 Kan. 582; Hoggard v. Jordan, 14 N. C. 610; 6 Am. & Eng. Ann. Cas. 634; Schuster v. Morton, 187 S. W. (Mo.) 2. (7) Under the Married Woman's Act a husband has no vested estate in his wife's separate property during her life. Evans v. Lobdale, 6 Houst. (Del.) 215. (8) In the construction of a will the intention of the testator must prevail unless it is contrary to some rule of law. Borland on Wills, p. 296; Burnet v. Burnet, 244 Mo. 497. (9) The estate by curtesy is derived by the husband through his wife and contemplates a continuation of the estates of the wife in the husband during his life and makes no break in the succession, whereas title by will is an alienation and constitutes a passing of the title. 1 Washburn on Real Property, p. 159; Hayes v. Barrniger, 169 Fed. 224.

WHITE, C.—The plaintiff sued in ejectment for a one-fourth interest in certain real estate in the city

of St. Louis, and in a second count of the petition demanded partition of the same alleging that the plaintiff was entitled to an undivided one-fourth interest in fee simple in the premises; the defendant Bernard P. Bogy to an undivided one-half interest, and the defendant Bernard P. Bogy, Jr., to an undivided one-fourth interest. Plaintiff is the daughter, and defendant Bernard P. Bogy, Jr., is the son, of Eleanor M. Bogy, deceased, and defendant Bernard P. Bogy is the surviving husband of Eleanor M., and the father of Violet and Bernard P., Jr. Plaintiff claims under the will of her mother who died June 10, 1904. Defendant Bernard P. Bogy in his separate answer asserts his right to possession of the property in dispute, by virtue of his curtesy.

The plaintiff in reply set up the will of Eleanor M. Bogy, alleged that Bernard P. Bogy accepted its provisions, and elected to take under it, and further alleged that by such acts he was estopped to claim any interest in the real estate contrary to its provisions. The first clause of the will is as follows:

"First. Should I die leaving surviving me my husband and a child or children, then it is my will that my whole estate, real and personal, be divided between my husband and children, in the proportion of one half to my husband and one half to my child or children."

The third clause is as follows:

"Third. Should I die leaving surviving me neither husband nor children, then and in such event I give, devise and bequeath my whole estate, both real and personal, to my mother Ann E. Griffith."

The fourth clause appoints Bernard P. Bogy executor and requests that he may serve without bond. The judgment of the circuit court was in accordance with the prayer of the petition.

I. If it was the intention of the testatrix by the first clause of the will to give her husband an undivided

one-half interest in fee simple in the premises and to
her children an undivided half interest
**Taking Under** in fee simple, and that intention clearly
**Will and**
**Curtesy Besides.** appears, then Bernard P. Bogy was put
to his election. as to whether he would
claim under the will or claim his curtesy devolved upon
him by operation of law. The two claims are incon-
sistent. The children could not have their fee simple
interest if his curtesy should be carved out leaving them
only a remainder, and he would not have a vendible,
fee-simple, half interest in the property if he simply
held his life estate in the whole.

The principle applicable here has been considered
and discussed in all its important phases in recent ad-
judications of this court. The rule announced by this
court may be stated thus: Where a testator by will at-
tempts to dispose of property which the will cannot
affect because by operation of the law it devolves upon
another, and at the same time makes provision for such
other out of property which the testator may devise,
the other cannot accept the provision of the will with-
out allowing his property to go as the will directs.
[Stoepler v. Silberberg, 220 Mo. 258, 1. c. 270; Wood v.
Trust Co., 265 Mo. 1. c. 525, and cases there cited; Linds-
ley v. Patterson, 177 S. W. 1. c. 832; Schuster v. Mor-
ton, 187 S. W. 2.] All those cases, under varying cir-
cumstances and construing different statutes, announce
the principle in similar general terms.

II. It is claimed by appellant that the will by its
terms does not attempt to dispose of the curtesy of Ber-
nard P. Bogy, and therefore he is not put
**Intention** to his election. Appellant contends with
**to Create**
**Fee Simple** much subtlety and plausibility that the use
**Estate.** of the expression "my whole estate, real
and personal," could not include the estate
and interest of the surviving husband; and further that
the testatrix under the terms of the will as a whole, and
the circumstances surrounding, could not have intended
to pass any estate except that which lawfully she might
devise, and therefore the effect of the will was merely

to dispose of the remainder after the termination of the husband's life estate, giving the plaintiff an undivided one-fourth in that remainder.

The term "estate" as used in instruments of this character does not necessarily mean the interest which one may have in certain property; it also has a popular significance, a general significance, to which the courts sometimes give effect. When applied to real estate the word is sometimes construed to mean the testator's specific lands and not the quantity of interest he may have in them. [Godfrey v. Humphrey, 29 Am. Dec. 621, 18 Pick. 537.] "The word estate . . . may be used to express either the quantity of interest devised or to designate the thing devised." [Hart v. White, 26 Vt. 1. c. 267; Hudson v. Wadsworth, 8 Conn. 348, 1. c. 358.] The word "estate" taken in this primary sense as used in a will has been held to be synonymous with the word "property." [Foil v. Newsome, 50 S. E. (N. C.) 1. c. 598.] According to some of the dictionary definitions it may mean "fortune," "possessions." So it does not necessarily follow that because the testatrix speaks of her "estate" the word must be given its restrictive meaning which would include only her specific interest in the property. It is probable that when she used the expression "my whole estate, real and personal," it was equivalent to saying "all my real estate and personal property." Therefore, we may gather from the instrument, in the light of surrounding circumstances, what was the *intention* of the testatrix. Having ascertained that intention the solution of the question is at hand. [Burnet v. Burnet, 244 Mo. 1. c. 497.]

Appellant argues that the husband's curtesy is a life estate vested on the death of his wife by force of the common law, and she could not have had in contemplation to dispose of it, as might be the case if she had specifically described the property instead of mentioning her estate. It should be noticed that the terms used in the statutes and in rules laid down in decisions defining and describing the curtesy of the husband at common law

always mention it as an interest in *his wife's land*. He acquires his right to the curtesy by virtue of it being "her land." The statute (Sec. 536, R. S. 1909), empowering a married woman to devise land by will, mentions it as "her land," and provides that such devise shall be subject to the rights of the husband to his curtesy. In all those instances "her land" is spoken of as designating the property which is under consideration and not her specific interest in it. The Married Woman's Act of 1889 applied to this property because the marriage took place in 1890. The husband's common-law curtesy was a mere life estate, contingent on his outliving her. The wife had entire control and management of her real estate, and enjoyment of the usufruct free from her husband's control. She could convey it without his joining in the deed and pass a fee simple title, subject only to the contingency that he might outlive her and claim his curtesy in it. [Farmers Exchange Bank v. Hageluken, 165 Mo. 443; Kirkpatrick v. Pease, 202 Mo. l. c. 490.] Very naturally she would call it "my real estate," and when she mentioned her "estate real and personal" in the will, she intended the words to have the same force as such words have when used in the statutes, and desired them to be as inclusive as if she had used a specific designation and description of the property to be affected.

Furthermore, the third clause of the will provides that if her husband and children do not survive her, her "whole estate, both real and personal," shall go to her mother. Of course, it cannot be questioned that the third clause, if the conditions were such that it would apply, would pass the fee simple estate. There is no reason to suppose that by the use of those words in one clause of the will she meant to devise merely a remainder and in another clause she meant by the same words to pass the entire estate. Nor is it likely that she intended to pass a larger interest in the personal property than in the real estate when using the words, "my whole estate, real and personal." And, when she expressed her desire in the will by saying, "it is my will that my

whole estate, real and personal, be divided between my husband and my children in the porportion of *one-half to my husband and one-half to my child or children,"* it is highly improbable that she thereby intended a higher and larger interest in the specific property should be vested in her husband than in her children. It would be unusual if she intended to restrict her children each to an undivided one-fourth interest in remainder in the property when the law gave them the entire remainder. It is apparent that her purpose in making the will was to make some provision for the children in addition to what the law gave them, a provision which would go into immediate effect for their benefit.

III.   It is asserted, however, that even if the husband is put to a election he has not elected and may yet do so. It is true that an election being a choice between two alternatives, there would be none if the appellant merely claimed both under the will and his right by curtesy. [Cobb v. Macfarland, 87 Neb. l. c. 411; Whitridge & Alexander v. Parkhurst, 20 Md. l. c. 70-1.] It is also a rule that when one is put to an election between two inconsistent courses and he first adopts one by some unequivocal art, that is an election which he cannot afterwards recall. [Stone v. Cook, 179 Mo. 534; Carper v. Crowl, 149 Ill. l. c. 480.] The appellant in this case now claims both his curtesy in the property and an undivided half interest in remainder under the will. Eleanor M. Bogy died in 1904 and the defendant Bernard P. Bogy, after her death, continued in possession of the real estate. That act was consistent with either a claim of curtesy or a claim under the will, because by the terms of the will he was tenant in common with his children who were minors living with him at the time. [Hynds v. Hynds, 253 Mo. l. c. 33; Boothe v. Cheek, 253 Mo. l. c. 130; Stevens v. Martin, 168 Mo. 407, l. c. 412; Seibert v. Hope, 221 Mo. l. c. 635; Rodney v. McLaughlin, 97 Mo. l. c. 431.] At that time he performed no unequivocal act indicating an intention to claim his curtesy, but he did certain things which unequivocally indicated an intention

to claim under the will. The will was in his possession at the time of his wife's death. He presented it for pro- bate to the probate court, making the usual affidavit. He applied for letters testamentary, making affidavit that he would "faithfully execute the last will of the testatrix." He filed and swore to an inventory of the estate. This inventory sets forth the real estate here in dispute and lists no personal property. He filed his final settlement reporting there was no personal property for disbursement and was discharged.

The authorities are conflicting as to whether or not the mere qualifying and acting as executor is an election to take under the will. In California such acts are held insufficient to show election (In re Gwin, 77 Cal. 313; Estate of Frey, 52 Cal. 658); but in North Carolina the contrary is the rule (Mendenhall v. Mendenhall, 53 N. C. 287; Syme v. Badger, 92 N. C. 706). Many cases occur where such acts are noted as indicating an intention to elect, but are associated with other facts such as accepting a bequest. [Davidson v. Davis, 86 Mo. l. c. 444.] Many cases, cited in the text-books as holding that acting as executor is not an election, show facts which qualify the act: for instance, the case of Whitridge & Alexander v. Parkhurst, 20 Md. 62, where the executrix was claiming both under the will of her mother, of which she was executrix, and also under the earlier and conflicting will of her father; the case of Tyler v. Wheeler, 160 Mass. 206, where it was held the husband did not elect by qualifying as executor, because the will gave him nothing; the case of Kerrigan v. Conelly, 46 Atl. (N. J.) 227, where the surviving husband qualified as administrator with the will annexed, and he could carry out some provisions of the will which were not inconsistent with his claim under the law; the case of Reaves v. Garrett's Admr., 34 Ala. 558, where the executrix qualified in ignorance of her rights; the case of Pace v. Pace, 271 Ill. 114, and In re Proctor's Estate, 103 Iowa, 232, where the acts done as executor were not inconsistent with the claim under the law.

Often it has been held that any act or declaration of the widow plainly indicating a purpose to take under the will, or recognizing the force of the will, constitutes an election. [Craig v. Conover, 80 Iowa, l. c. 358; Melot's Estate, 231 Pa. 520. See also Appeal of Scholl, 17 Atl. (Pa.) 206.]. Where a widow filed a petition asking the court to carry the will into effect, she was held by that act to have elected. [Ashlock v. Ashlock, 52 Iowa, l. c. 322.] She could not afterwards reconsider the election so made, for the Supreme Court of Iowa in deciding the case said: "The moment she made such election, it appears to us that her relation to the estate, as well as that of the other devisees, became fixed." [See also Mitchell v. Vest, 136 N. W. (Iowa) 1054; Robertson v. Schard, 142 Iowa, 500.]

In this case the acts of Bernard P. Bogy in proving the will and qualifying under it, are inconsistent with any theory except an election to take under it. The absence of personal property emphasized the character of his acts. He could not say that he might execute the will in any particular and leave the real estate intact. The only property to be affected by it, as he must have known when he proved it, was the real estate now in dispute. His only reason for probating it and qualifying as executor was to carry out its provisions relating to the real estate. He received a benefit under it, because he acquired the vendible fee simple title to the half interest which it gave him. He had full knowledge of his rights. He knew what the law would give him independent of the will, and he knew what the will would give him. He knew all the property affected by the provisions of the will. Having that knowledge he deliberately chose to put the will into effect, declaring that he would execute its provisions; therefore he elected to take under it.

The judgment is affirmed.

*Roy, C.,* dissents.

PER CURIAM:—The foregoing opinion of WHITE, C., is adopted as the opinion of Court in Banc. *Bond* and

*Walker, JJ.*, concur; *Graves, C. J., Faris* and *Woodson, JJ.*, concur in separate opinion by *Graves, C. J.; Blair, J.*, dissents; *Williams, J.*, dissents, and adopts the opinion of *Roy, C.*, as his dissenting opinion.

GRAVES, C. J. (concurring)—In this case I concur in the opinion of WHITE, C., upon all of the questions therein considered. When this whole will is read (from its four corners, as we must, to get intent) there can be no question as to what the testatrix meant by the first clause of that instrument. She uses the terms "my whole estate, real and personal." In the second clause she uses the same terms. In this second clause of the will she eliminates her prospective children (for she had no children when the will was made) and divides the property between her husband and her mother. It would be giving language a strained construction to say that, by this second clause, she meant that her mother should only take a remainder in one-half of the realty. She intended to provide substantially for her mother immediately upon her death. A mere remainder would not do this. To my mind nothing is clearer than that this testatrix under the second clause in the will had reference to a fee simple estate in all her lands, and that her husband and her mother should each have an undivided half interest therein in fee. Her mother's age would preclude from her mind the idea of forcing her to run a race of life with her husband to see whether or not the mother would receive a substantial heritage by the will. When the testatrix subscribed to this will (in my humble judgment) she had no other thought than to give her mother and her husband their respective interests in fee simple.

A consideration of this second clause throws much light upon the first clause, because the same words are used. If she used the words "my whole estate, real and personal" in the sense of a fee simple interest therein in the second clause of the will, she evidently used them in the first clause. But this is not all. When we reach the third clause of the will we find the same words, i. e. "my whole estate, both real and personal." In that clause she is providing for the disposition of her estate in the

event she had neither husband nor children at her death. She was giving a fee simple to the mother, and yet uses the same identical language. Reading the whole will, as we must, it is clear that the terms "my whole estate, both real and personal" were used throughout the whole instrument in the sense of a fee simple estate. She therefore intended by the first clause to give to her husband one half of the real estate in fee simple, and the other half in fee simple was to go to her children. If then the husband desired to hold the life estate given him by the law, he was placed upon his election.

The next question is, has he elected? The facts of the case shows that he did. His letter to Judge Moseley of date November 18, 1912, speaks louder than his acts. This letter evinces the fact that he counseled with the probate judge, when he went in to administer upon this estate; that he was advised that the will gave him one half of the estate in fee simple and the other half for life; he proved the will and administered the estate on that theory; lawyers later advised him to the same effect. In fact, this letter shows that he was claiming one half the estate in fee simple and the other half for life. This kind of claim could only be based on the will. Under the law (without the will) he had only a life estate. Whenever he claimed more than a life estate, he was claiming under the will and not under the law, and against the will. That he did make this claim of a fee simple title is shown by his letter. That letter reads: "Now, as to V.'s rights. At the time the will was probated I was informed by the court that I had a *fee in one half* and a *curtesy in the other half,* as there were no conditions attached to the acceptance of *the one half left me absolutely.* Since V.'s marriage I have consulted several lawyers, and they have all agreed to the above." The italics are ours. That the husband from the time of probating this will to the time of writing this letter was claiming a fee in one half this real estate there can be no question, and if he was, he was claiming it under the will and not otherwise. He has therefore elected to take under the will. That the construction given by this court of this will may differ from his views of the meaning of the will, or the advice

he received as to its meaning, cannot wipe out the fact that the husband did elect to take under the will. His views of the will were erroneous, and he may have lost in the transaction, but that he elected to take under the will because he thought (under his construction) that he was getting one half of the property absolutely, is clear. For these reasons, as well as for the reasons stated in the opinion, I concur fully in the opinion by WHITE, C.

ROY, C. (Adopted by WILLIAMS, J., dissenting) —Plaintiff's petition is in two counts, the first being in ejectment for an undivided fourth of certain real estate in the city of St. Louis, and the second for the partition of the same property. There was judgment for the plaintiff in accordance with her petition, and the defendant Bernard P. Bogy has appealed.

The defendant Bernard P. Bogy and Eleanor M. Griffith were married February 5, 1890. There were born of that marriage two children, the plaintiff who was born January 15, 1891, and defendant Bernard P. Bogy, Jr., who was born November 12, 1894. During her lifetime the wife was seized in fee simple of the property in controversy, which was and still is tenement property and under. lease to various tenants. Up to the time of her death the rents were paid to the wife. She died June 10, 1904. She left a will which was presented for probate by the surviving husband and was admitted to probate by the probate court of said city on June 14, 1904.

The material parts of that will are as follows:

"First. Should I die leaving surviving me my husband and a child or children, then it is my will that my whole estate, real and personal, be divided between my husband and children, in the proportion of one-half to .my husband and one-half to my child or children.

"Second. Should I die leaving surviving me my husband, but no child or children, then it is my will that my whole estate, real and personal, be equally divided between my husband and my mother, Ann E. Griffith, one-half to each.

"Third. Should I die leaving surviving me neither husband nor childern, then and in such event I give,

devise and bequeath my whole estate, both real and personal, to my mother, Ann E. Griffith.

"Fourth. I hereby appoint my husband, Bernard P. Bogy, my executor and request that he be not required to give bond."

The executor therein named thereupon qualified as such, and filed an inventory of the property of the estate, showing the property in controversy and no other. There was no personal property of the estate. In due time the executor filed his final settlement of such estate, showing that he had received nothing, and had paid out nothing as such executor.

Immediately upon the death of the wife the husband began collecting the rents of the property, amounting to about $1200 a year. He did not account for any portion of the rents to his children.

This suit was begun February 24, 1914. Bernard P. Bogy, Jr., was made defendant and appeared by the defendant Bernard P. Bogy as his guardian *ad litem*.

The first count of the petition contains the following:

"That defendants thereafter, on, to-wit, the twentieth day of June, 1904, entered into and upon such premises and have since said entry and do now unlawfully withhold from plaintiff the possession of said premises, to her damage in the sum of one hundred thousand dollars; that plaintiff was upon the said tenth day of June, 1904, and has been ever since said date legally entitled to the possession of said premises."

The answer of defendant Bernard P. Bogy states that he is the owner of an estate by the curtesy in all said real estate, and that he is entitled under said will to one-half of the remainder in fee, and that each of the other parties is entitled to a fourth of the remainder in fee under said will.

The reply alleges that such will disposed of the entire property in fee, giving to the father a half and to each of the children a fourth. It contains the following:

"That the said Bernard P. Bogy, defendant, accepted the devise so made to him in said will, and elected to take and enjoy the same, and now claims, and has claimed ever since the probating of said will, to be

the owner in fee-simple of an undivided one-half interest in and to the real estate described in the petition, under and by virtue of the provisions of said will.

"That neither the plaintiff nor either of the defendants have or claim any other source of title to said real estate than by, through and under said Eleanor Bogy and by, through and under said will; and that the said Eleanor Bogy, deceased, is the common source of title.

"That said defendant Bernard P. Bogy elected to accept the devise made to him in said will, and is estopped thereby to claim, assert or set up any right, title and interest in and to said real estate, or any part thereof, contrary to the provisions of said will or by reason of curtesy of the laws of this State, for that the claim of estate by curtesy in said land is antagonistic to the dispositions made in said will; and that the said Bernard P. Bogy, defendant, waived his right to claim title by curtesy to said real estate by reason of his assent to said will and his claim under the provisions thereof, as aforesaid, and by reason of his acceptance of the provisions of said will, as aforesaid, made in his favor, and his acceptance of the trust thereby created as executor and the probating thereof, for that plaintiff says that the assent to said will on the part of the said Bernard P. Bogy and acceptance by him of the fee-simple estate devised to him in said will are antagonistic to the claim now made by him of an estate by curtesy therein, and this she is ready to verify."

On the trial the plaintiff introduced in evidence a letter written by the defendant Bernard P. Bogy to Judge Moseley, plaintiff's attorney, dated November 18, 1912. It contained the following:

"Now, as to V.'s rights. At the time the will was probated I was informed by the court that I had a fee in one half and a curtesy in the other half, as there were no conditions attached to the acceptance of the one-half left me absolutely. Since V.'s marriage I have consulted several lawyers, and they have all agreed to the above."

It is agreed that "V." mentioned in that letter is the plaintiff.

I. In Myers v. Hansbrough, 202 Mo. 495, Valliant, P. J., said:

"The particular title by which the plaintiff claims right to the possession of this land was never in his wife, it is an interest cut out of her title, subtracted from it, not by her leave or license, but by the arbitrary force of the law. It is an interest that could not be taken from the husband either at the will or sufferance of the wife. If a creditor of hers, after the estate by the curtesy initiate had vested in the husband, had obtained judgment against her and sold the land in her lifetime, the purchaser at the sheriff's sale would have obtained what was hers, which, under the statute, included possession during her life, but the creditor would not by such sale acquire what was not hers, what was beyond the reach of her will or sufferance."

Wife's Estate Devised.

That case has been cited with approval in Donovan v. Griffith, 215 Mo. l. c. 162, and in Teckenbrock v. McLaughlin, 246 Mo. 711.

Mrs. Bogy owned an estate or interest in this land, but she did not have the entire ownership of it. The husband also had an estate or interest in it. Her will does not purport to dispose of any particular item of property, real or personal. It does not attempt to dispose of "my land." It disposes of "my whole estate, real and personal," no more, no less. By its very terms it includes everything that was hers and excludes everything else. The language used seems specially and peculiarly adapted to the purpose of leaving the husband's curtesy estate unaffected by it.

If the wife entertained any intention of disposing of the entire ownership of the land including the husband's curtesy estate, she did not express such intention in the language of the will. We find no authority anywhere holding that the words "my estate" can be construed to include the estate of others in land not otherwise particularly described.

Godfrey v. Humphrey, 18 Pick. (35 Mass.) 539, is cited as upholding the contrary view. In that case the testator owned the land in fee, and the only question was whether the devise of his "estate" to the wife, without words of explanation, carried the fee or only an estate for the life of the wife. The question at issue here was not there involved. But the court in that case said:

"It has long been held, that the devise of all a man's estate, where there are not words to control or restrain its operation, shall be construed not merely to mean his lands, but the quantity of interest which he has in them, so as to pass an estate of inheritance, if he has one. [Carter v. Horner, 4 Mod. 89, 1 Eq. Cas. Abr. 177.]"

Certainly it will be construed "to pass an estate of inheritance *if he has one.*"

In Graham v. Roseburgh, 47 Mo. 111, l. c. 114, it was said:

"The principle of election is frequently applied by courts of equity in cases of wills, and rests upon the obligation imposed on a party to choose between two inconsistent or alternative rights or claims in cases where there is a clear intention of the person from whom he derives one, that he should not enjoy both."

Note that the intention must be "clear."

In Schorr v. Etling, 124 Mo. 42, it was claimed that a devise to a wife was in exclusion of her homestead estate. It was said:

"The intent to exclude the widow from her legal right must clearly appear; if it be doubtful, she is not to be excluded."

In our opinion this is not a case in which the surviving husband was put to his election, and that he is entitled to hold both his estate by the curtesy and the half interest in the remainder devised to him in the will.

II. For convenience it will be understood that when we hereinafter speak of the defendant it will mean Bernard P. Bogy, Sr., unless it is otherwise expressed.

Even if the law were such as to put the husband to his election, the act of the husband in presenting the will

for probate and acting as executor thereunder does not, in itself, constitute such an election. [Benedict v. Wilmarth, 46 Fla. 535; In re Proctor's Est., 103 Iowa, 232; Smith's Admr. v. Smith, 6 Ky. L. R. 453; Kerrigan v. Conelly, 46 Atl. (N. J.) 227; Williams v. Boul, 184 N. Y. 605; Reaves v. Garrett's Admr., 34 Ala. 558; In re Gwin, 77 Cal. 313; Whitridge v. Parkhurst, 20 Md. 62; Cameron v. Cameron, Ohio Prob. R. 157; Taylor v. Browne, 2 Leigh (Va.), 419; Pace v. Pace, 271 Ill. 114.]

*Election.*

The courts of North Carolina hold that where a widow qualifies as the executrix of her husband's will, she cannot afterward dissent from the will and claim dower. [Mendenhall v. Mendenhall, 53 N. C. 287.] But the reason for that holding is there expressed in these words:

"The right to dissent is inconsistent with her act of qualifying as executrix, and the duties thereby assumed in this:

"1. The appointment and qualification of one as executrix, operates as an assignment in law, and vests the whole personal estate in such executor. If one executes a writing by which he appoints A. B. his executor, that is a will. A. B. thereby becomes the owner of the estate, and, after paying off the debts, is, by the common law, entitled to the surplus.

"If one executes a writing by which he disposes of his property after his death, without appointing an executor, that is a testament. If he does both, that is appoints an executor, and also disposes of his estate, or a part thereof, that is 'a last will and testament.' The executor becomes the owner of the estate, and after paying off the debts and legacies, is entitled, by the common law, to the surplus. Thus, it is seen that *the office of executor* is deemed in law of great importance; it draws to it the ownership, control and management of the entire personal estate, and gives a right (at common law) to the surplus. It is, therefore, manifestly inconsistent for a widow to claim the office and its rights and in-

cidents under the will, and at the same time to enter her dissent and claim dower, year's provision and a distributive share, as if her husband had died intestate; in other words, there is an inconsistency in claiming the office *under the will,* and at the same time claiming rights as if there was no will."

The common law giving to the executor such surplus was in force in that State. It is the reason for such holding. We have no such law here, and therefore no such reason, and no such rule. There is a special reason in this case, over and above what is shown in most of the other cases above cited. We have a right to assume that the court, at the time of the probating of the will, told the defendant that he was entitled to hold both the curtesy and under the will, for the fact that such advice was given was put in evidence by the plaintiff, and all the evidence in the case is consistent with the fact that such advice was given. It would be remarkable if this court should now hold that he made an election by probating the will and serving as executor after the court had told him that he could take both estates without an election, and in spite of the fact that this court has held that no election is called for unless the will is clear and free from doubt on this point.

III. The fact that the defendant claimed both the curtesy and under the will does not in itself amount to an election to take under the will and relinquish the curtesy. [Cobb v. Macfarland, 127 N. W. (Neb.) 378; Whitridge v. Parkhurst, 20 Md. 62; Schuster v. Morton, 187 S. W. (Mo.) 2.]

*Inconsistent Acts.*

IV. If the facts in this case show an election it was an election to take the curtesy and not under the will.

The surviving husband has never received any property under the will. There was no personal property, and the interest in remainder devised to him has never been received by him. If he had sold and conveyed in fee an undivided half of the property and had appropriated to his

*Election of Curtesy.*

own use the consideration therefor, a different situation would confront us. But there has not been any change in the ownership or possession of the property since the wife's death, except that immediately after her death the husband went into possession and has been receiving the rents. He has claimed to be doing that by right of his curtesy estate. It is strictly in accordance with such estate. It cannot be presumed that he collected the rents for himself and his minor children in accordance with the will. It does not appear that he ever gave bond as their guardian. We note that he represents the minor son here as guardian *ad litem* and not as general guardian. In State ex rel. v. Staed, 143 Mo. l. c. 252, it was said:

"He was not living with his son, but his son was living with him. The estate of the son was not derived from the father, and he had not, so far as the evidence shows, given bond or qualified himself to act as guardian or curator of the estate of the child as required by Revised Statutes 1889, section 5279. It cannot be said, therefore, that his possession was the possession of the child, and it is clear that the fact that the child was living with his father in the premises did not change the character of the father's original possession."

It certainly cannot be held in this case that the possession of the property by the father was as a cotenant with his children in face of the allegation of the petition that he had ousted the plaintiff.

The judgment should be reversed and the cause remanded. *White, C.,* dissents.

The foregoing opinion of Roy, C., in Division, is adopted by WILLIAMS, J., as his dissenting opinion in Banc.