## JACOBS et al. v. COMMISSIONER OF INTERNAL REVENUE.

Circuit Court of Appeals, Eighth Circuit.
July 23, 1929.

Rehearing Denied September 30, 1929.

No. 8249.

David Goldsmith, of St. Louis, Mo., for appellants.

John Vaughan Groner, Sp. Asst. to Atty. Gen. (Mabel Walker Willebrandt, Asst. Atty. Gen., Sewall Key, Sp. Asst. to Atty. Gen., and C. M. Charest, Gen. Counsel, Bureau of Internal Revenue, and Donald V. Hunter, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., on the brief), for appellee.

Before KENYON, Circuit Judge, and JOHNSON and McDERMOTT, District Judges.

JOHNSON, District Judge. Morris Eisenstadt, now deceased, in his lifetime entered into an antenuptial contract with his widow, Marie Eisenstadt, then Marie Johnston, by which it was agreed that, if she survived him, she should be paid out of his estate the sum of $75,000, and that said sum should be in lieu of all her rights of dower and other marital rights. He died on July 27, 1923. His will contained a provision that his widow, at her election, in lieu of the $75,000 stipulated in the antenuptial contract to be paid her from his estate upon his death, should be paid during her natural life the net income from $250,000 of his estate, to be placed in trust for such purpose. The widow on September 17, 1924, notified the executors of the estate that she elected to accept the provision of the will in her favor in lieu of the $75,000 stipulated in the antenuptial contract. On September 24, 1924, the executors made return of the federal estate tax due from the estate, and in their return deducted this $75,000 from the value of the gross estate in determining the value of the net estate upon which to calculate the tax. The Commissioner of Internal Revenue disallowed the deduction, and was sustained by the Board of Tax Appeals. 9 B. T. A. 636. The matter is now before this court upon the petition of the executors for a review of the decision of the Board of Tax Appeals.

The statute involved is section 403 of the Revenue Act of 1921, 42 Stat. p. 279, c. 136, which so far as material reads:

"That for the purpose of the tax the value of the net estate shall be determined—(a) in the case of a resident, by deducting from the value of the gross estate—(1) such amounts for funeral expenses, administration expenses, claims against the estate, unpaid mortgages upon, or any indebtedness in respect to, property," etc.

The contentions of the respective parties are: On behalf of the estate:

(1) That the antenuptial agreement was a valid and subsisting contract and gave the widow the right to demand and receive the $75,000 stipulated therein from the estate of her husband. The following cases are cited in the brief in support of this contention: Vogel v. Vogel's Adm'r, 22 Mo. 161; Matter of Baker, 83 App. Div. 530, 82 N. Y. S.

390, affirmed 178 N. Y. 575, 70 N. E. 1094; In Matter of Vanderbilt, 184 App. Div. 661, 172 N. Y. S. 511, affirmed 226 N. Y. 638, 123 N. E. 893; Hill v. Treasurer and Receiver General, 227 Mass. 331, 116 N. E. 509.

This contention of the executors of the estate is conceded by the government. Its brief contains this statement:

"It seems to be the settled law of the state of Missouri, as it is generally, that an antenuptial contract, for the payment of money or property in consideration for the release by a wife of her dower and other rights growing out of her marital status is a valid contract which may be enforced against the estate of the deceased husband. Vogel v. Vogel's Adm'r, 22 Mo. 161. However, that proposition, so much relied upon by petitioners, is not determinative of this case."

In the brief of the executors the above proposition is modified, and, as modified, is made the minor premise of counsel's argument; the statute as construed by counsel being the major premise. The argument as stated in the brief is:

"Since the claim of Mrs. Eisenstadt under the antenuptial contract was a subsisting and enforceable claim against the estate of her husband *at the time of his death,* its amount was deductible from his gross estate in the determination of the amount of his net estate. This follows from the express provisions of the federal statutes. Section 403 of the Revenue Act of 1921, which was in force at the time of the death of Mr. Eisenstadt, directs that 'claims against the estate' shall be deducted from the gross estate in computing the amount of the net estate. This direction is absolute, and it applies to all claims against the estate, without any limitation whatsoever. The courts cannot supply a limitation by construction.

"By 'claims against the estate' must have been intended *claims existing at the time of death;* for all of the provisions of the statute which enter into the determination of the amount of value of the taxable estate relate to that time. Indeed, the net value of the *estate* at any given time is the value at that time of all the property belonging to the estate, less the amount of the charges against the estate at that time. To fix the value of the property as of one time, and the amount of the charges as of another time, would not be the determination of the net value of the estate at either time; and section 402 of the Revenue Act of 1921 (42 Stat. 278) provides expressly 'that the value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated.' " (Italics ours.)

In support of this argument the following cases are cited: Young Men's Christian Association v. Davis, 264 U. S. 47, 44 S. Ct. 291, 68 L. Ed. 558; Edwards v. Slocum, 264 U. S. 61, 44 S. Ct. 293, 68 L. Ed. 564; Nichols v. Coolidge, 274 U. S. 531, 47 S. Ct. 710, 71 L. Ed. 1184, 52 A. L. R. 1081—and commented upon.

The government states its contention in its brief in this language:

"The will of Morris Eisenstadt created an interest in lieu of the amount agreed to be paid by the antenuptial contract. This provision preserved the $75,000 as part of the estate, and gave the widow a life interest in a trust fund. Under those circumstances, a duty to elect arose, which, until exercised, left the status of the estate unsettled, and when exercised in favor of the bequest, canceled, as of the death of Morris Eisenstadt, the claim arising out of the antenuptial contract. The Congress was taxing net estates remaining after all valid claims were satisfied, and did not intend to authorize deductions, for estate tax purposes, of amounts not deductible in law or in fact."

This contention of the government is elaborated in the argument, and the following cases are cited in support of the proposition that, when the widow elected to accept the provision made for her in the will, her election "canceled, as of the death of Morris Eisenstadt, the claim arising out of the antenuptial contract," viz.: Wood v. Conqueror Trust Co. et al., 265 Mo. 511, 178 S. W. 201; Sparks v. Dorrell, 151 Mo. App. 173, 131 S. W. 761; Moseley v. Bogy, 272 Mo. 319, 198 S. W. 847.

An analysis of the respective arguments reveals that the contention in behalf of the estate is built upon the antenuptial contract, and the moment of the death of the deceased as the chief corner stones of the structure. The argument in behalf of the government, on the other hand, makes the election of the widow to take under the provision of the will the decisive fact in the case.

The fact that the matter for decision lies within narrow limits does not render its solution less difficult, and for the same reason that it is more difficult to cross a stream over a foot pole than over a bridge. The foot pole is so narrow that balancing is difficult, and the slightest misstep hazardous; the bridge so broad that one is not conscious of balancing, and a misstep usually of no moment. The principle or principles controlling in a narrow case are usually uncertain

and elusive. In a case of broader scope, the threads leading toward a correct solution are usually numerous, and to be encountered at many points.

The contentions of the parties are irreconcilable, and neither satisfying. Their consideration has led to the conclusion that the case turns upon what Congress intended to include by the phrase "claims against the estate," found in the statute, rather than upon the antenuptial contract and the moment of the death of the deceased, put forward by the estate, or upon the election of the widow, put forward by the government.

The Supreme Court of the United States, in Nichols v. Coolidge, 274 U. S. 531, page 541, 47 S. Ct. 710, 713 (71 L. Ed. 1184, 52 A. L. R. 1081), has said: "Taxes are very real things and statutes imposing them are estimated by practical results." In New York Trust Co. v. Eisner, 256 U. S. 345, 41 S. Ct. 506, 507, 65 L. Ed. 963, 16 A. L. R. 660, Justice Holmes · remarked that: "A page of history is worth a volume of logic."

Tax laws deal with actualities, and the rules prescribed by Congress are intended to produce practical results, when applied by untechnical men. We think actuality was the thought foremost in the mind of Congress when it put the phrase "claims against the estate" in this and other Revenue Acts. The claims which Congress intended to be deducted were actual claims, not theoretical ones. Indeed, a claim without a claimant is a sort of legal figment, which has the tendency to produce intellectual dizziness, comparable to that felt when gazing down into running water from an insecure footing. The widow never claimed anything from the estate under the antenuptial contract, and the gross estate was not decreased one single cent by reason of the $75,000 stipulated in the antenuptial contract. All the logic in the world cannot change these facts. If an executor or administrator leaves his statutory fees in the estate, can it be said that they should nevertheless be deducted in determining this tax? If a father or mother, holding an obligation of a deceased child, refuses to demand payment from his or her estate, would the obligation nevertheless be a claim against the estate to be deducted in determining this tax?

In our opinion a claim without a claimant was not in the mind or purpose of Congress when the words "claims against the estate" were written into the revenue statutes. The administration of an estate necessarily extends over a period of months, sometimes of years, and always under state laws requiring the orderly presentation and allowance of claims against it. It was, in our opinion, claims presented and allowed or otherwise determined as valid against the estate and actually paid or to be paid that Congress had in mind, when it provided for the deduction from the gross estate of "claims against the estate" in determining the value of the net estate for taxing purposes.

In 11 C. J. p. 817, it is said: "The word [claim] is a broad and comprehensive term, and in its legal use has been understood in a somewhat enlarged sense, being defined as a demand of some matter as of right by one person on another to do or to forbear to do some act or thing as a matter of duty, embracing every species of legal demand, and including 'demand' and 'debt.'" On page 819 it is said: "In statutes providing for the administration of the estates of deceased persons, requiring a presentation of claims against the estate, it is generally construed by the authorities as referring to demands of a pecuniary nature, which could have been enforced against the deceased in his lifetime, and when so used the word has been judicially defined as the asserted liability of decedent and his estate to pay a sum of money; a legal demand for money to be paid out of an estate."

In Knutsen v. Krook, 111 Minn. 357, 127 N. W. page 13, 20 Ann. Cas. 852, the Supreme Court of Minnesota uses this language: "The word 'claim,' as generally employed, has a broad and comprehensive meaning, embracing every species of legal demand. 7 Cyc. 180. But, as employed in a particular statute, its meaning is often restricted and limited, and in statutes providing for the administration of the estates of deceased persons, requiring a presentation of claims against the estate, is by the authorities generally construed as referring to demands of a pecuniary nature, and which could have been enforced against the deceased in his lifetime." See, also, Words and Phrases, Second Series, vol. 1, pp. 727, 728.

Of course there are deductions which are determined as claimed by the executors by the facts and conditions existing at the date of the death. The Supreme Court of the United States, in Ithaca Trust Co. v. United States, 279 U. S. 151, 49 S. Ct. 291, 73 L. Ed. 647, has held that the value of gifts to charity which were subject to the life estate of the widow should be determined by the use of mortuary tables notwithstanding the death of the widow before the tax was in fact ascertained. The court said:

"The estate so far as may be is settled as of the date of the testator's death. See

Hooper v. Bradford, 178 Mass. 95, 97, 59 N. E. 678. The tax is on the act of the testator not on the receipt of property by the legatees. Young Men's Christian Association v. Davis, 264 U. S. 47, 50, 44 S. Ct. 291, 68 L. Ed. 558; Knowlton v. Moore, 178 U. S. 41, 49, 20 S. Ct. 747, 44 L. Ed. 969, and passim; New York Trust Co. v. Eisner, 256 U. S. 345, 348, 349, 41 S. Ct. 506, 65 L. Ed. 963, 16 A. L. R. 660; Edwards v. Slocum, 264 U. S. 61, 44 S. Ct. 293, 68 L. Ed. 564. Therefore the value of the thing to be taxed must be estimated as of the time when the act is done."

Some of the cases cited in the opinion, it will be observed, are relied upon in this case by the executors. But in the Ithaca Trust Co. Case the court was dealing with the present value of a gift to charity postponed by the life estate of the widow. Such gifts are authorized to be made as deductions by paragraph (3) of section 403. We are concerned in this case with paragraph (1) of that section. Of course we accept without reservation the definition of the tax and the rules governing its assessment stated by the Supreme Court in these cases. But that court has not said that the deductions authorized by paragraph (1) of section 403 must be determined solely by the facts and conditions existing on the day of the death, and we are confident that court will never say so in view of the provisions of paragraph (1). Paragraph (1) not only allows as deductions claims against the estate—which it is true are liabilities of the estate at least potentially at the moment of the death—but also allows as deductions funeral and administration expenses, which have no existence until after the death. All these, funeral expenses, administration expenses, and claims against the estate, under this paragraph, were intended by Congress to be determined in the course of an orderly administration of the estate in and by the state courts. This intention is taken for granted in the provisions of section 405 of the statute (42 Stat. 281), which reads:

"That if no administration is granted upon the estate of a decedent, or if no return is filed as provided in section 404, or if a return contains a false or incorrect statement of a material fact, the collector or deputy collector shall make a return and the Commissioner shall assess the tax thereon."

Our interpretation of the statute is in harmony with the practice of the Treasury Department, which is charged with the administration of the act. Article 32 of Regulation 63, 1922 Edition, provides:

"*Deduction of Claims, Expenses, etc.*—In order to be deductible under the foregoing provision of the statute, the item must fall within one of the several classes of deductions specifically enumerated therein, and must also, except in the case of deductible losses during the administration of the estate, be one the payment of which out of the estate is authorized by the laws of the jurisdiction under which the estate is being administered. * * * An item may be entered on the return for deduction though the exact amount thereof is not then known, provided it is ascertainable with reasonable certainty, and will be paid. No deduction may be taken upon the basis of a vague or uncertain estimate. When an uncertain or contingent liability was undetermined at the time of audit of the return by the Commissioner, and, as a consequence, deduction was not allowed therefor in such audit, the remedy is by a claim for abatement or refund when the liability and the amount thereof becomes fixed and determined."

Articles 33 to 38, following, deal with the subject in the same practical manner.

In our opinion, the department in its regulations has correctly construed the statute, and in this case we are convinced the Commissioner and the Board of Tax Appeals correctly applied it.

The petition for review is dismissed.

McDERMOTT, District Judge (dissenting). I regret my inability to concur. The estate tax is a creature of statute, and, if we leave the statute, we are lost. Rightly or wrongly, the statute provides that there shall be deducted "from the value of the gross estate * * * claims against the estate. * * *" The Treasury Department interprets this to mean exactly what it says, in article 39 of its Regulations:

"Claims against the Estates.—The amounts that may be deducted under this heading are such only as represent personal obligations of the decedent *existing at the time of his death*, whether matured or not. Only such claims *as are enforceable* against the estate may be *deducted*." (Italics mine.)

The government and the majority opinion concede in terms that a valid, enforceable claim for $75,000 existed against the estate at the time of the death of the testator. The reasons given for ignoring the statute do not persuade me. It is said that this claim was not paid. In the light of Ithaca Trust Co. v. United States, 279 U. S. 151, 49 S. Ct. 291, 73 L. Ed. 647, decided by the Supreme Court of the United States on April

8, 1929, I doubt if that is material. In the cited case a life tenant had an expectancy of some years; she did not live out her expectancy; she died within six months, apparently before a return was made of the tax. The government levied the tax in the light of what transpired after the death, and valued the life estate as of six months. The Supreme Court did not concur, and deducted a value predicated on her expectancy on the day the testator died, and not on the length of time she actually lived. "The estate as far as may be settled as of the date of the testator's death." Indeed, no other conclusion can be reached from the earlier cases of Y. M. C. A. v. Davis, 264 U. S. 47, 44 S. Ct. 291, 68 L. Ed. 558; Edwards .v. Slocum, 264 U. S. 61, 44 S. Ct. 293, 68 L. Ed. 564; Nichols v. Coolidge, 274 U. S. 531, 47 S. Ct. 710, 71 L. Ed. 1184, 52 A. L. R. 1081, all of which make quite clear that these "death duties" are measured by the situation as it exists at the time of the death, and "comes into existence before and is independent of the receipt of the property by the legatee." The situation must be looked at as of some particular time. The decisions settle it that the cut-off date is the date of the decease. So, although it need not be decided in this case, I am not at all certain that the conclusive analogy as to the father and son, suggested by the majority, is sound. If my father owed me some notes at his death, I see no reason why the executor should not deduct them when paying the estate tax; if, some years later, I should mark them "Paid" and hand them to my mother, I do not know why the government should try to upset the estate tax theretofore correctly paid, and am not nearly as sure as the majority that such effort would be successful.

But the $75,000 debt here was paid. Bear in mind the concession of an existing legal obligation; that at any time between July 27, 1923, and September 17, 1924, the widow could collect it by presenting a claim for it, or by suing on her contract; and if she sued on her contract the executor could not defend by setting up the option in the will; and if she died during that period her administrator could collect it, and in fact would have no other alternative. What happened on September 17, 1924? The widow, availing herself of an option given *her* by the will, accepted a trust fund of $250,000, from which she was to have the income for life; and thus the estate *satisfied* the debt. So the debt was paid, and presumably well paid. Doubtless the satisfaction cost the estate more than the $75,000; for a fair presumption is that, if the widow could have taken her $75,000 in cash and purchased a better annuity than the one the will provided, she would have done so.

Moreover, this opinion seems to me to be in conflict with the principle of the decision of Allen v. Brandeis, 29 F.(2d) 363, decided by another division of this court. There a widow had a statutory widow's share of the estate, worth $483,727.79. Her husband's will, in effect, gave her the option of an income for life of $50,000 a year, and she exercised it. The government undertook to tax these annuities as income. The court held that she purchased them with her statutory right, which was not taxable, and that the annuity payments were not taxable until her nontaxable capital invested therein was returned to her. To the same effect is U. S. v. Bolster (1 C. C. A.) 26 F.(2d) 760, 59 A. L. R. 491; Warner v. Walsh (2 C. C. A.) 15 F.(2d) 367. In other words, the option in the will did not change the tax liability.

The practical test suggested by the majority opinion is not pursued far enough. True, the beneficiaries of this estate did not pay the $75,000; they paid more, for they find that their enjoyment of $250,000 is postponed an indefinite number of years, and the income therefrom going to the widow. Yet the government declines to allow either the $75,000 as a deduction, or the commuted value of $250,000. That is not right. By reason of this enforceable claim, this estate was worth $75,000 less than its gross amount at the date of the testator's death; was worth that much less every day until September 17, 1924; on that date and thereafter it was depleted by the commuted value of a life estate in $250,000. But the government says it is not depleted by anything on account of this claim, and makes no deduction at all.

But neither words, nor the citation of such authorities as those above, or of such as Ferguson v. Dickson, 300 F. 961 (C. C. A.), certiorari denied 266 U. S. 628, 45 S. Ct. 126, 69 L. Ed. 476, can add much to the proposition that the statute requires that legally enforceable claims, existing at the time of death, shall be deducted, and that all parties, the government and the majority of the court, concede a legally enforceable claim did exist, and was not deducted.

I therefore must dissent.