ESTATE OF CLAIRE M. CONARD, DECEASED, RICHARD LEE CONARD, Executor, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Estate of Conard v. Commissioner
Docket No. 6998-73
United States Tax Court
T.C. Memo 1975-249; 1975 Tax Ct. Memo LEXIS 125; 34 T.C.M. (CCH) 1071; T.C.M. (RIA) 750249; July 28, 1975, Filed Dennis O. Smith and John T. Suter, for the petitioner. Thomas M. Ingoldsby, for the respondent. WILBUR
MEMORANDUM FINDINGS OF FACT AND OPINION WILBUR, Judge: Respondent determined a deficiency in Federal estate tax due from the estate of Claire M. Conard *126 in the amount of $3,728.36. The sole issue for decision is whether the estate is entitled to deduct, as a claim against the estate, the amount of $35,800 representing three unsecured notes endorsed by the decedent as a co-guarantor. FINDINGS OF FACT Some of the facts have been stipulated. The stipulation of facts and the attached exhibits are incorporated by reference. The petitioner is the estate of Claire M. Conard (decedent) who died on April 1, 1970. The executor for the estate is Richard Lee Conard (Richard or executor) who resided in Hutchinson, Kansas, at the time the petition was filed. The estate has been administered in the probate court in Reno County, Kansas. The first notice of an appointment of an executor for the estate and notice to creditors was published on April 15, 1970. Prior to her death, the decedent and her brother, Richard, operated and were the shareholders of the Salt City Business College, Inc., (College) in Hutchinson, Kansas. Richard became the sole shareholder after decedent's death. Several years prior to decedent's death the College began to borrow money regularly from the Hutchinson National Bank and Trust Company (Bank) in Hutchinson, *127 Kansas. The loans were evidenced by notes which were periodically renewed by cancellation and issuance of new notes. The College signed as payor all notes for the loans made to it by the Bank. The College was and has always remained primarily liable for the repayment of all loans to it by the Bank. Richard alone signed notes as a guarantor for the first several loans made to the College. Subsequently, the decedent endorsed notes as a co-guarantor with Richard. At the time of her death, there were three loans outstanding represented by notes which the decedent had endorsed as a co-guarantor. The total face value of these out-standing notes was $35,800. All of the notes which the decedent endorsed as a co-guarantor were unsecured. Shortly after the decedent's death, the notes on which the decedent was a co-guarantor were cancelled by issuance of new notes which the College signed as payor and Richard endorsed as guarantor. The time for filing or exhibiting claims against the estate expired on January 15, 1971. The Bank did not file or exhibit a claim against the decedent's estate for her guarantee of the notes. The face value of the notes was deducted as a debt of the decedent on *128 the estate tax return. After decedent's death the College continued to sign as payor and Richard endorsed as guarantor notes for loans made to the College. On April 3, 1972 Richard pledged certain property which he owned or had an interest in as collateral to secure the loans the Bank made to the College. Both the petitioner and the decedent were cash basis taxpayers. OPINION The issue for decision is whether the petitioner may deduct from the gross estate the face value of unsecured notes endorsed by the decedent as a co-guarantor. Respondent contends that since no claim for these notes was presented pursuant to Kansas law, the claim is forever barred. Thus, according to respondent, since petitioner has not and will not be required to honor the notes as co-guarantor, the deduction for the face value of the notes must be denied. Petitioner, on the other hand, asserts that the Bank filed no claim because the Bank orally agreed to accept the estate assets as security for the notes in lieu of filing a claim. The pledge of the estate assets, in petitioner's view, constitutes a valid debt of the decedent which entitles the estate to a deduction. Alternatively, petitioner contends *129 that the cancellation of the notes and issuance of new ones constituted sufficient payment to permit deduction of the face value of the notes as a claim against the estate. The deduction for claims against the estate provided by section 2053(a) (3) [1] is limited to those claims which are allowable under the laws of the jurisdiction in which the estate is administered and which represent personal obligations of the decedent at the time of his death. Whether or not the claim has matured does not affect deductibility. [2]
*130 It is settled, however, that Congress was concerned with actual claims, not theoretical ones that the estate will never be required to pay. Jacobs v. Commissioner,34 F.2d 233, 235 (8th Cir. 1929), cert. denied 280 U.S. 603 (1929). Thus, although a valid, enforceable claim exists at the time of death, if subsequent events relieve the estate of liability for the claim, no deduction will be allowed. [3]Estate of Quintard Peters Courtney,62 T.C. 317 (1974); Estate of Frank G. Hagmann,60 T.C. 465 (1973), affd. per curiam 492 F.2d 796 (5th Cir. 1974); Estate of Ethel M. DuVal,4 T.C. 722 (1945), affd. 152 F.2d 103 (9th Cir. 1945), cert. denied 328 U.S. 838 (1946); John Jacobs, Executors,34 B.T.A. 594 (1936). [4]
*131 The conclusion we reach is dictated by our decision in Estate of Frank G. Hagmann,supra. There bona fide obligations on which the decedent was primarily liable were deducted from the gross estate. The relevant state statute provided that claims not properly filed would be void and unenforceable. No claims in respect of the debts were filed within the statutory period. We held that since the estate assets would not be used to pay the debts, the respondent's disallowance must be sustained. Similarly, the deduction must be denied in the instant case. Kansas law [5] requires that any demand against a decedent's estate, including those arising from liability a surety, guarantor or indemnitor, be exhibited within 9 months of publication of the first notice to creditors. Moreover, Kansas law requires that liens upon the property of a decedent not existing at death must be exhibited in the same manner as other claims against the estate. [6] Failure to exhibit the claim precludes its later enforcement. *132 In this case, notice of the appointment of an executor and notice to the creditors to present their claims was first given on April 15, 1970. The bar date for filing claims was January 15, 1971, and the Bank failed to present any claim by this date. The petitioner was thus relieved of liability on the notes endorsed by the decedent as co-guarantor. The petitioner has not and will not be required to honor the notes as co-guarantor. Consequently, the deduction must be denied. Petitioner's reliance on an oral agreement pursuant to which the estate assets were encumbered is misplaced. The record demonstrates that assets were encumbered by Richard after the bar date in his individual capacity as co-guarantor rather than in his fiduciary capacity as executor. We believe this accords with the Bank's decision to look to Richard alone as guarantor of the obligations in default of the primary obligor. Since there were some assets in the estate that did not pass to Richard, the Bank would otherwise have been motivated to file a claim. Additionally, if the Bank was relying on an oral agreement with Richard in his capacity as executor, it is difficult to believe it would have let the bar date *133 pass without reducing the agreement to writing or requiring that the assets of the estate be pledged. [7]
Petitioner's contention that the renewal of the notes by cancellation of the old notes and issuance of new ones constitutes sufficient payment to permit deduction for the face value of the notes is similarly without merit. Rather than seek payment from either the primary obligor or the guarantors, the Bank consented to renew the notes with only Richard as guarantor. Thus, while the underlying obligation was not extinguished, the estate was released from secondary liability on the notes. Clearly, issuance of the new notes did not constitute payment (and certainly not by the estate), but rather extended the term for payment and eliminated the decedent and her estate as a coguarantor. The estate has not paid the indebtedness represented by the notes on which the decedent was a co-guarantor and the failure to present the *134 claim for payment pursuant to Kansas law extinguished the estate's liability. "[The] gross estate was not decreased one single cent * * *. All the logic in the world cannot change these facts." Jacobs v. Commissioner,34 F.2d 233, 235 (8th Cir. 1929), cert. denied 280 U.S. 603 (1929). Therefore, no deduction is allowable for the indebtedness under section 2053, and we must sustain respondent's determination. Decision will be entered for the respondent.
Footnotes
1. Unless otherwise indicated all section references are to the Internal Revenue Code of 1954. Sec. 2053 reads in pertinent part: (a) GENERAL RULE.--For purposes of the tax imposed by section 2001, the value of the taxable estate shall be determined by deducting from the value of the gross estate such amounts-- (1) for funeral expenses, (2) for administration expenses, (3) for claims against the estate, and (4) for unpaid mortgages on, or any indebtedness in respect of, property where the value of the decedent's interest therein, undiminished by such mortgage or indebtedness, is included in the value of the gross estate, as are allowable by the laws of the jurisdiction, whether within or without the United States, under which the estate is being administered. ↩
2. Estate Tax Regs. 20.2053-4.↩
3. A claim against the decedent as a secondary obligor is deductible if rights against the primary obligor are worthless. Commissioner v. Wragg,141 F.2d 638 (1st Cir. 1944). See also John Parrott, Jr., Executors,7 B.T.A. 134 (1927), affd. 30 F.2d 792 (9th Cir. 1929), cert. denied 379 U.S. 870 (1929). Richard testified that the primary obligor (Salt City Business College, Inc.) was unable to pay the notes, was insolvent, and continued to lose money after his sister's death. Respondent did not challenge Richard's characterization on cross-examination, nor present any contradictory evidence. Additionally, the estate tax return valued the stock in the corporation at zero and respondent did not challenge this valuation. While by no means free from doubt, we believe the state of the record requires a conclusion that at the time of the decedent's death the primary obligor was unable to honor the notes in question or reimburse the guarantors. Thus, in denying relief to petitioner, we do not do so on the grounds that the primary obligor was able to pay or that the petitioner would be subrogated to rights against the primary obligor equal to the claim against the estate. See Du Val's Estate v. Commissioner,152 F.2d 103 (9th Cir. 1945), affg. 4 T.C. 722 (1945), cert. denied 328 U.S. 838↩ (1946). 4. For a different view, see Russell v. United States,260 F. Supp. 493 (N.D. Ill. 1966); Winer v. United States,153 F. Supp. 941↩ (S.D. N.Y. 1957). See also Stephens, Maxfield, & Lind, Federal Estate and Gift Taxation, 5-17, 5-18 (3d Ed.)
5. Since the estate was administered in Kansas, Kansas law governs. Relevant Kansas statutes, in effect in 1970, read in pertinent part: Kan. Stat. Ann. sec. 59-2236 (1964): 59-2236. Notice to creditors. The notice of appointment to be published by an executor or administrator shall be to the creditors, heirs, devisees, legatees, and all others concerned. It shall state the date of appointment and qualification, and shall notify the creditors to exhibit their demands against the estate within nine months from the date of the first published notice as provided by law, and that if their demands are not thus exhibited they shall be forever barred. Kan. Stat. Ann. sec 59-2237 (1939): 59-2237. Exhibition of demands and hearing-thereon; allowance without hearing, when. Any person may exhibit his demand against the estate of a decedent by filing his petition for its allowance in the proper probate court. Such demand shall be deemed duly exhibited from the date of the filing of said petition. The petition shall contain a statement of all off-sets to which the estate is entitled. The court shall from time to time as it deems advisable, and must at the request of the executor or administrator, or at the request of any creditor having exhibited his demand, fix the time and place for the hearing of such demands, notice of which shall be given in such manner and to such persons as the court shall direct. Any demand not exceeding fifty dollars, duly itemized and verified, may be allowed, if approved in writing by the executor or administrator, without compliance with any of the provisions of this act relating to petition, notice of hearing, or otherwise. The verification of any demand may be deemed prima facie evidence of its validity unless a written defense thereto is filed. Upon the adjudication of any demand, the court shall enter its judgment allowing or disallowing it. Such judgment shall show the date of adjudication, the amount allowed, the amount disallowed, and classification if allowed. Judgments relating to contingent demands shall state the nature of the contingency. Kan. Stat. Ann. sec. 59-2239 (1964): 59-2239. Nonclaim statute. All demands, including demands of the state, against a decedent's estate, whether due or to become due, whether absolute or contingent, in cluding any demand arising from or out of any statutory liability of decedent or on account of or arising from any liability as surety, guarantor, or indemnitor, and including the individual demands of executors and administrators, not exhibited as required by this act within nine months after the date of the first published notice to creditors as herein provided, shall be forever barred from payment: Provided,↩ That the provisions of the testator's will requiring the payment of a demand exhibited later shall control. No creditor shall have any claim against or lien upon the property of a decedent other than liens existing at the date of his death, unless an executor or administrator of his estate has been appointed within one year after the death of the decedent and such creditor shall have exhibited his demand in the manner and within the time herein prescribed. 6. See Kan. Stat. Ann. sec. 59-2239 (1964), Id.↩
7. It was not until April 3, 1972, more than 1 year after the bar date had passed, that Richard, in his individual capacity, pledged the assets in question. This was more than a year and a half after the notes had been renewed with only Richard as guarantor.↩