ESTATE OF Samuel C. SACHS, Deceased, Stephen C. Sachs, Sophia R. Sachs, Co–Executors, Appellees,

v.

COMMISSIONER OF INTERNAL REVENUE, Appellant.

ESTATE OF Samuel C. SACHS, Deceased, Stephen C. Sachs, Sophia Sachs, Co–Executors c/o Jerome W. Sandweiss, Appellants,

v.

COMMISSIONER OF INTERNAL REVENUE, Appellee.

Nos. 87–2489, 87–2596.

United States Court of Appeals, Eighth Circuit.

Submitted June 13, 1988.

Decided Sept. 15, 1988.

Raymond W. Hepper, Washington, D.C., for appellant.

Jerome W. Sandweiss, St. Louis, Mo., for appellees.

Before ARNOLD, Circuit Judge, and FLOYD R. GIBSON and HENLEY, Senior Circuit Judges.

ARNOLD, Circuit Judge.

This tax case involves two problems in the treatment of net gifts under the federal estate and gift tax laws. We hold, first, that a decedent's executors may not deduct, as a claim against the estate under 26 U.S.C. § 2053(a)(3), an income-tax liability which was subsequently forgiven by Congress. Second, we hold that the decedent's gross estate must, under 26 U.S.C. § 2035(c), include the amount of any gift tax paid by the donees of any net gift made within three years of the decedent's death.

### I.

Samuel C. Sachs, the decedent, died on June 27, 1980. Less than three years before his death, Sachs and his wife gave stock valued at $2,399,044 to three irrevocable trusts established for the benefit of their grandchildren. The donation was designed as a net gift—that is, the trust instrument required, as a condition of the gift, that the trustees satisfy all gift-tax liability arising from the Sachses' donation of stock. Accordingly, the donee trusts paid a gift tax of $612,700, while Sachs and his wife reported the gift at a value of $1,786,340.

After Sachs's death, the gift of stock was included in Sachs's gross estate on the estate-tax return pursuant to § 2035(a).[1] The stock's value on the date of Sachs's death had declined to $2,196,180, and the executors followed the then-established practice of subtracting the amount of the gift tax paid by the donee trusts from the value of the gift included in the estate, for an includable total of $1,583,480.

1. This provision reads as follows:
    Inclusion of gifts made by decedent.—Except as provided in subsection (b), the value of the gross estate shall include the value of all property to the extent of any interest therein of which the decedent has at any time made a transfer, by trust or otherwise, during

Sachs's executors filed the estate-tax return on March 25, 1981. Three weeks earlier, this Court decided *Diedrich v. Commissioner*, 643 F.2d 499 (8th Cir.1981), which had held for the first time that a donee's payment of the gift tax on a net gift creates taxable income for the donor. After the Supreme Court affirmed our decision in *Diedrich*, 457 U.S. 191, 102 S.Ct. 2414, 72 L.Ed.2d 777 (1982), the executors of Sachs's estate agreed to recognize the gift tax paid by the donees, less the adjusted basis in the stock, as income to the estate. The executors proceeded to pay the additional income tax resulting from the donees' 1978 payment of the gift tax, and deducted this payment as a claim against the estate under § 2053(a)(3).

The Sachs estate's additional tax liability created by *Diedrich* was forgiven by Congress two years later. The Tax Reform Act of 1984, Pub.L. 98–369, § 1026(a), provides that

> [i]n the case of any transfer of property subject to gift tax made before March 4, 1981 ... gross income of the donor shall not include any amount attributable to the donee's payment of (or agreement to pay) any gift tax imposed with respect to such gift.

98 Stat. 494, 1031 (1984). As a result, the Sachs estate received a full refund of all income tax it had paid on the donees' 1978 satisfaction of the gift-tax liability for the gift of stock.

After reviewing the return, the Commissioner took the position that the estate should include, in addition to the value of the net gift itself, the amount of the gift tax paid by the donees. In a petition to the Tax Court, the estate sought a redetermination of this decision, claiming it rested on a misinterpretation of § 2035(c).[2] In his amended answer, the Commissioner sought to disallow the estate's deduction under § 2053(a)(3) for the income-tax liability

the 3–year period ending on the date of the decedent's death.

2. The estate's petition also raised an issue involving the valuation of so-called "flower bonds." The estate does not appeal the Tax Court's ruling for the Commissioner on this issue.

which had been imposed under *Diedrich,* but which had subsequently been forgiven by the Tax Reform Act of 1984. By an eleven-member majority with seven judges dissenting, the Tax Court held that the estate was entitled to deduct, as a claim against the estate under § 2053(a)(3), the income tax which was subsequently refunded. *Estate of Sachs v. Commissioner,* 88 T.C. 769, 779–83 (1987). The Commissioner appeals, and we reverse the decision of the Tax Court on this issue. By a fourteen-member majority with four judges dissenting, the Tax Court further held that the donees' 1978 tax payment on the net gift was includable in the gross estate under § 2035(c). *Id.* at 772–778. The estate cross-appeals this determination, and we affirm the Tax Court on this issue.

## II.

■ Section 2053(a)(3) allows executors to deduct claims against the estate from the gross estate in computing the value of the taxable estate. The problem at hand concerns the tax treatment of claims against the estate which cease to exist as a result of events after death. The Commissioner argues that when such claims disappear, the estate's § 2053(a)(3) deduction disappears with them. We agree.

In reaching the opposite conclusion, the Tax Court relied on the valuation principle Mr. Justice Holmes adopted in *Ithaca Trust Co. v. United States,* 279 U.S. 151, 49 S.Ct. 291, 73 L.Ed. 647 (1929), that "[t]he estate so far as it may be is settled as of the date of the testator's death." *Id.* at 155, 49 S.Ct. at 291. The Tax Court reasoned that, on the date of Mr. Sachs's death, his estate was liable to pay income tax on the donees' 1978 gift-tax payment, as the Supreme Court would later establish in *Diedrich.* This additional unpaid tax liability remained a valid and enforceable claim against the estate until Congress nullified it four years later. Applying the valuation formula in *Ithaca Trust,* the Tax Court concluded that the estate was still entitled to a deduction for the income-tax payment which Congress refunded, since

the estate's gross value was diminished by that amount at the time of Sachs's death.

In this Circuit, however, the date-of-death principle of valuation does not apply to claims against the estate deducted under § 2053(a)(3). In *Jacobs v. Commissioner,* 34 F.2d 233 (8th Cir.), *cert. denied,* 280 U.S. 603, 50 S.Ct. 85, 74 L.Ed. 647 (1929), this Court held that an estate could not deduct, under the statutory predecessor of § 2053(a)(3), the amount of a claim against the estate arising from an antenuptial agreement which was subsequently waived by the decedent's widow. Our Court observed:

> The claims which Congress intended to be deducted were actual claims, not theoretical ones. Indeed, a claim without a claimant is a sort of legal figment.... In our opinion a claim without a claimant was not in the mind or purpose of Congress when the words "claims against the estate" were written into the revenue statutes.... It was, in our opinion, claims presented and allowed or otherwise determined as valid against the estate and actually paid or to be paid that Congress had in mind, when it provided for the deduction from the gross estate of 'claims against the estate' in determining the value of the net estate for taxing purposes.

34 F.2d at 235. In *Jacobs,* we interpreted the date-of-death rule announced in *Ithaca Trust* to apply only to valuations of charitable bequests, for which estates took deductions under the predecessor of 26 U.S.C. § 2055. See *Jacobs,* 34 F.2d at 236. The *Jacobs* Court distinguished *Ithaca Trust* on this ground, and held that the estate could not take a deduction for an obligation from which it had been released.

The Tax Court acknowledged that it was bound by *Jacobs,* but it drew a distinction between cases like *Jacobs,* where the waiver of the claim was foreseeable on the date of death, and this case, where the legislative waiver of the claim could not reasonably have been anticipated on the date of death. 88 T.C. at 783. We do not think the distinction proposed by the Tax Court is justified. Our Court disallowed the deduc-

tion in *Jacobs*, not because the decedent could have foreseen that his widow might waive her claim against the estate, but simply because the claim ceased to exist. "The claims which Congress intended to be deducted were actual claims, not theoretical ones." 34 F.2d at 235. The *Jacobs* Court asked rhetorically:

> If an executor or administrator leaves his statutory fees in the estate, can it be said that they should nevertheless be deducted in determining this tax? If a father or mother, holding an obligation of a deceased child, refuses to demand payment from his or her estate, would the obligation nevertheless be a claim against the estate to be deducted in determining this tax?

*Id.* The intended answer in both examples was obviously "no," yet both of these hypothetical post-death occurrences—the refusal of executor's fees and the waiver of a claim by a grieving parent—are events which might be unforeseeable as of the date of death.[3] Following *Jacobs*, we hold that an estate loses its § 2053(a)(3) deduction for any claim against the estate which ceases to exist legally, regardless of whether the nullification of the claim could have been foreseen. *Id.*

The estate argues that *Jacobs* inadequately distinguished the date-of-death valuation rule in *Ithaca Trust*, relying primarily on *Propstra v. United States*, 680 F.2d 1248 (9th Cir.1982). In *Propstra*, the Ninth Circuit criticized the distinction our Court drew in *Jacobs* between the valuation of charitable bequests under *Ithaca Trust* and the valuation of claims against the estate. The *Propstra* Court commented:

> [t]his technical distinction, although accurate, fails to explain why deductions for claims against the estate should be computed differently from charitable bequests. The Eighth Circuit, relying on this distinction in *Jacobs*, provided no indication of why Congress would have intended such an anomolous [sic] result.

*Id.* at 1255 n. 11. The Ninth Circuit then applied the *Ithaca Trust* date-of-death valuation principle to lien claims against the estate which were later settled for less than the amount deducted, and allowed the estate to deduct the full amount of the subsequently compromised lien claims. See 680 F.2d at 1253–57.

To the extent that *Propstra* and a later Ninth Circuit case, *Estate of Van Horne v. Commissioner*, 720 F.2d 1114 (9th Cir. 1983), *cert. denied*, 466 U.S. 980, 104 S.Ct. 2364, 80 L.Ed.2d 835 (1984), disagree with this Court's holding in *Jacobs*, they cannot be persuasive authority for the estate before a panel of this Circuit. However, since *Propstra* relies on a divergent reading of *Ithaca Trust*, a decision which binds both circuits, it is appropriate to explain more fully the distinction our Court identified sixty years ago in *Jacobs*.

The value of charitable bequests must be determined as of the date of the testator's death because any other method would permit estates a one-sided advantage in the use of the deduction for charitable gifts. Where, as in *Ithaca Trust*, a testator donates the remainder after a life estate to charity, the ultimate amount of the residual charitable gift depends on the longevity of the life tenant. In *Ithaca Trust*, the donee widow died soon after her husband, and so the actual remainder given to charity was unexpectedly large. If the valuation of the estate recognized the actual date of the widow's demise, the corresponding deduction for the residual gift to charity would be much larger than the testator could have anticipated. In denying the estate a deduction for the amount which actually went to charity, the Court in *Ithaca Trust* simply required the estate to value the residual gift according to the same actuarial principles which would have applied had the widow survived the estate's closing.

For the proposition that "[t]he tax is on the act of the testator not on the receipt of property by the legatees," 279 U.S. at 155,

---

3. The Tax Court's opinion does not indicate how foreseeable a waiver would have to be in order to disallow the deduction for the unpaid claim.

49 S.Ct. at 291, the *Ithaca Trust* Court cited *Young Men's Christian Ass'n v. Davis,* 264 U.S. 47, 50, 44 S.Ct. 291, 292, 68 L.Ed. 558 (1924), another case involving charitable giving. In *Davis,* the Court described Congress's particular focus on the expected value of gifts at the time of the testator's death:

> Congress was ... looking at the subject from the standpoint of the testator and not from the immediate point of view of the beneficiaries. It was intending to favor gifts for altruistic objects, not by specific exemption of those gifts but by encouraging testators to make such gifts. Congress was in reality dealing with the testator before his death.

*Id.* The legislative intent recognized in *Davis* prefigures the result in *Ithaca Trust.* The tax law provides an incentive for testators to make charitable bequests only so far as deductions are allowed for the expected value of the gifts at the time of death. The actual course of events after death is necessarily irrelevant to the implicit "dealing with the testator before his death" which *Davis* identified as the purpose of the charitable deduction, and so "... the value of the thing to be taxed must be estimated as of the time that the thing is done." *Ithaca Trust,* 279 U.S. at 155, 49 S.Ct. at 292.

■ The date-of-death valuation principle adopted in *Ithaca Trust* is not universally applicable to other tax contexts. In a case predating *Propstra,* the Ninth Circuit itself held that

> ... Congress did not intend to make events at the date of death invariably determinative in computing the federal estate tax obligation. See, e.g., Internal Revenue Code of 1954, §§ 2032, 2053(a)(1) & (2), and 2054. And when it appears that the intent of Congress will be served by considering events subsequent to death for this purpose the courts have not hesitated to do so. [citing, *inter alia, Jacobs v. Commissioner.*]

*Estate of Shedd v. Commissioner,* 320 F.2d 638, 639 (9th Cir.1963). In particular, none of the considerations which dictate date-of-death valuation of charitable bequests applies to claims against the estate. As we observed in *Jacobs,* the deduction for indebtedness allowed under § 2053 (and its predecessors) covers several items, such as funeral and administrative expenses, which do not exist at all until after death. See 34 F.2d at 236. A tort action may be filed against the decedent after his death, but it would be absurd to deny the estate a deduction for the settlement of the lawsuit on the ground that the decedent was unaware of the potential claim on the date of his death. Furthermore, there is no legislative interest behind the § 2053(a)(3) deduction in encouraging claims against the estate in the same way that date-of-death valuation encourages charitable bequests. Congress was not "dealing with the testator before his death," nor was it attempting to influence the testator's behavior in any way when it passed § 2053(a)(3); it merely provided a mechanism for an estate to settle its accounts without being liable for money which ultimately does not belong to the estate. Where subsequent events establish that money deducted under § 2053(a)(3) does indeed belong to the estate, there is no legislative purpose comparable to that underlying the charitable deduction to preserve the fiction of the testator's original assumption.

Our limitation in *Jacobs* of the § 2053(a)(3) deduction to claims "actually paid or to be paid" has special importance when the event releasing the estate from a claim is an Act of Congress. Unlike the settlement or waiver of a claim between private parties, a federal statute which dissolves a tax obligation changes the law which imposed the estate's liability in the first place, and does so, as a practical matter, with retroactive effect. It is even more difficult here than it was in *Jacobs* to make out the "theoretical" claim for which the estate seeks a deduction. In the ordinary sense, it is true that Congress's action released the Sachs estate from a claim which the United States could otherwise have enforced, but in a legal sense, § 1026(a) of the Tax Reform Act retrospectively declared that the claim never existed to begin with, by providing that a donor's

gross income does not include donee payments of gift tax for any transfer before March 4, 1981. The estate cannot argue that the historical existence of its liability until 1984 justifies its § 2053(a)(3) deduction, since § 1026(c) of the Act allows the "refund or credit of any overpayment of tax resulting from [§ 1026(a) ]" within one year of enactment, regardless of the operation of any statute of limitations or prior adverse determination. In *Jacobs,* we denied a deduction for a "claim without a claimant"; that rationale applies with all the more force here, where the claim has itself vanished along with the claimant.[4]

Nothing in the legislative history of § 1026 indicates that Congress intended taxpayers to enjoy the double benefit of an income-tax refund which would also be exempt from estate taxation. The House Committee report expresses the intent to return donors making gifts prior to *Diedrich* to the same tax position they would have enjoyed under pre-*Diedrich* law:

> While the committee believes that the *Diedrich* decision is correct, it also believes that taxpayers should not be adversely affected because they may have made such transfers in reliance upon what was thought to be established law....

H.R.Rep. No. 98–432, Part 2, 98th Cong., 2d Sess. at 1707, U.S.Code Cong. & Admin. News. pp. 697, 1328. If an estate-tax deduction were allowed for the refunded income-tax payment, the Sachs estate would actually enjoy a better position than it would have had under the law before *Diedrich.* When Congress refunds a tax liability, "... the Code should not be interpreted to allow respondent 'the practical equiva-

lent of double deduction' absent a clear declaration of intent by Congress." *United States v. Skelly Oil Co.,* 394 U.S. 678, 684, 89 S.Ct. 1379, 1383, 22 L.Ed.2d 642 (1969) (citation omitted). There is no such declaration in the history of § 1026. Congress may grant windfalls to taxpayers if it wishes, but it would take a much clearer expression than what we have here to convince us that it intended to do so. We hold, therefore, that the estate is not entitled to a deduction under § 2053(a)(3) for the income-tax liability refunded under § 1026 of the Tax Reform Act of 1984.

### III.

Section 2035(c) of the Code provides:

> The amount of the gross estate (determined without regard to this subsection) shall be increased by the amount of any tax paid under chapter 12 by the decedent or his estate on any gift made by the decedent or his spouse after December 31, 1976, and during the 3–year period ending on the date of the decedent's death.

In its cross-appeal, the estate contends that the donees' payment of the gift tax on the 1978 net gift should not be included in the gross estate under § 2035(c), on the ground that this was not "a tax paid ... by decedent or his estate." The Tax Court rejected this argument, and we affirm.

The estate's position depends on the distinction between tax payments made by donees of net gifts and tax payments made directly by decedent-donors. This distinction has little force after *Diedrich.* The Court in *Diedrich* held that

---

**4.** The estate's position since the filing of its return has implicitly applied the principle that changes in the law retroactively determine the past existence or non-existence of claims. At the time of Sachs's death, *Diedrich* had not yet been decided. The estate did not acknowledge any income-tax liability for the donees' 1978 gift-tax payment until after the Supreme Court affirmed our decision in *Diedrich.* Once the estate acknowledged its additional liability under *Diedrich,* it properly deducted the amount of this tax liability as a claim against the estate under § 2053(a) (3). It would have been absurd for the Commissioner to disallow the deduction

(prior to the 1984 Act) on the ground that this claim against the estate had not existed at the time of Sachs's death. The *Diedrich* decision imposed a legal obligation arising from the 1978 gift which the estate was required to pay, and so the amount of this obligation was deductible from the gross, as a claim against the estate, regardless of whether Mr. Sachs could have foreseen these later developments in tax law. When Congress lifted the obligation imposed by *Diedrich* for all transfers prior to March 4, 1981, its statutory change in the law had retroactive effect, as *Diedrich* itself did.

[w]hen a donor makes a gift to a donee, a 'debt' to the United States for the amount of the gift tax is incurred by the donor. Those taxes are as much the legal obligation of the donor as the donor's income taxes.... [W]hen a donee agrees to discharge an indebtedness in consideration of the gift, the person relieved of the tax liability realizes an economic benefit.

457 U.S. at 197, 102 S.Ct. at 2418. Citing the principle of *Old Colony Trust Co. v. Commissioner*, 279 U.S. 716, 729, 49 S.Ct. 499, 504, 73 L.Ed. 918 (1929), that "[t]he discharge by a third person of an obligation to him is equivalent to receipt by the person taxed," the *Diedrich* Court held that a donee's gift tax payment creates taxable income for the donor. 457 U.S. at 195, 199–200, 102 S.Ct. at 2417, 2419–20.

■ Just as the donee's tax payment must be included in the donor's taxable income, a donee's tax payment (on a gift made within three years of the donor's death) is an includable part of the donor's gross estate under § 2035(c). The fact that the Internal Revenue Service received the payment for the decedent's gift-tax liability *via* the donee does not make it any less a "tax paid ... by the decedent or his estate" within the meaning of § 2035(c). In the case of the net gift, the payment of the gift tax is (or can be) made with funds from the donor's gift, and pursuant to the donor's condition. The donee's payment of the gift tax under these circumstances is not an independent act of gratitude or reciprocity, as the Supreme Court recognized:

The existence of the 'condition' that the gift will be made only if the donee assumes the gift tax consequences precludes any characterization that the payment of the taxes was simply a gift from the donee back to the donor.

*Diedrich*, 457 U.S. at 198 n. 8, 102 S.Ct. at 2419 n. 8. We agree with the Tax Court that the donor of a net gift uses the donee as a conduit for the payment of his tax liability, and "[a]s donor of a net gift, he may be deemed to have paid the tax by ordering the donee to pay it over...." 88 T.C. at 778.

■ Where taxpayers have structured indirect transactions to obtain tax advantages, the law typically looks to the substance, and not the form of the transaction. See *Diedrich*, 457 U.S. at 195, 102 S.Ct. at 2417, citing *Old Colony Trust*, 279 U.S. at 729, 49 S.Ct. at 504. In *Minnesota Tea Co. v. Helvering*, 302 U.S. 609, 58 S.Ct. 393, 82 L.Ed. 474 (1938), the Supreme Court dealt with a corporate tax problem analogous to the net gift inclusion problem presented here. In that case, a corporation had turned over money from the sale of its assets to its stockholders on the condition that they would use this money to pay off the debts of the corporation. The Court held that the corporation was not entitled to characterize the payments to shareholders as a (tax-exempt) distribution:

... [T]he stockholders received the money from petitioner, ... not as a distribution for their benefit but as a fund the equivalent of which they were bound to pass on, and did pass on, to the creditors. The conclusion is inescapable, ... that by this roundabout process petitioner received the same benefit as though it had retained that amount from distribution and applied it to the payment of such indebtedness.

*Id.* at 613, 58 S.Ct. at 394. The *Minnesota Tea* Court concluded that "[a] given result at the end of a straight path is not made a different result because reached by following a devious path." *Id.* The same principle applies here. The donors were liable to pay the gift tax on a declared donation of $1,786,340, and they ensured that this liability would be paid by providing the donees with an additional $612,700, which the donors required the donees to turn over to the Internal Revenue Service on their behalf. We hold that the gift tax paid under this arrangement is a "tax paid ... by the decedent or his estate" under § 2035(c).

The estate argues further that no more than one-half of the gift tax paid by the donees can be included in the gross estate under § 2035(c), since the net gift was split between the decedent and his wife. The estate relies on this statement of the legislative intent of § 2035(c):

The amount of gift tax subject to this rule would include tax paid by the dece-

dent or his estate on any gift made by the decedent or his spouse after December 31, 1976. It would not, however, include any gift tax paid by the spouse on a gift made by the decedent within 3 years of death which is treated as made one-half by the spouse, since the spouse's payment of such tax would not reduce the decedent's estate at the time of death.

H.R.Rep. No. 98–1380, 94th Cong., 2d Sess. 1, 14 (1976) U.S.Code Cong. & Admin.News pp. 2897, 2908. If Mrs. Sachs had paid the gift tax on her half of the split gift from assets separate from her husband's estate, § 2035(c) would not include that payment in the gross estate. In this case, however, the payment of the gift tax was made entirely from the proceeds of the donated stock, all of which would have been included in the decedent's estate absent the gift. The assets which were used to pay the gift tax would have been part of the gross estate if the gift had never been made, and so the entire amount of the gift tax was properly included under § 2035(c).

The judgment of the Tax Court is accordingly

AFFIRMED IN PART AND REVERSED IN PART.