ESTATE of A. Devereau CHESTERTON

v.

The UNITED STATES.

No. 56–75.

United States Court of Claims.

March 23, 1977.

Chester M. Howe, Boston, Mass., atty. of record for plaintiff. Maxwell D. Solet, Gaston Snow and Ely Bartlett, Boston, Mass., of counsel.

Bruce W. Reynolds, Washington, D.C., with whom was Acting Asst. Atty. Gen. Myron C. Baum, Washington, D.C., for defendant. Theodore D. Peyser and Donald H. Olson, Washington, D.C., of counsel.

Before SKELTON, NICHOLS and BENNETT, Judges.

## ON CROSS MOTIONS FOR SUMMARY JUDGMENT

NICHOLS, Judge:

This suit for a refund of estate tax requires that we decide whether to fix the value of a widow's alimony claim against her former husband's estate, deductible under § 2053(a)(3) of the Internal Revenue Code of 1954, as of the time of decedent's death, or to reduce the value of the claim in light of subsequent events. The parties apprise us of decisions by other courts lending support to both sides of this question, for the controversy is not as novel elsewhere as it is here. We can take refuge in the eye of the storm no longer. We limit plaintiff's deduction to the amount it actually paid to satisfy the claim, taking into consideration events after decedent died and, accordingly, we hold for the Government.

This purely legal issue emerges from undisputed facts. A. Devereau Chesterton died on May 15, 1969, survived by his former wife, Marjorie. Decedent and Marjorie had agreed in October 1966 to a property and support settlement in anticipation of their divorce. In addition to certain payments during his life, decedent then promised Marjorie a bequest of alimony payments of $500 per month for as long as she lived and remained unmarried. Marjorie was 64 years old when Chesterton died and the $500 monthly payments began. In order to determine its taxable estate, plaintiff computed the present value of Marjorie's claim against it with reference to her remaining life expectancy on the date of Chesterton's death, and, presumably, the likelihood of her remarrying. The parties agree that the correct product of this computation is $59,047.97, which plaintiff seeks to deduct from the value of the gross estate. In fact, however, Marjorie remarried after receiving from the estate only nine monthly payments, so that her entire claim against the estate was fully satisfied for the sum of $4,500. In auditing the estate tax return, filed thereafter, the Commissioner of Internal Revenue disallowed all but this portion of the § 2053(a)(3) deduction, and assessed the resultant tax deficiency, which plaintiff has paid and claims for a refund. Plaintiff urges us to decide that the deduction for Marjorie's claim against Chesterton's estate was its commut-

ed value at the time of his death. Since we hold that the claim must be valued in light of her subsequent remarriage, however, the Government shall prevail.

Both parties recall that in *Commissioner v. Estate of Shively*, 276 F.2d 372 (2d Cir. 1960), the Second Circuit, also, resolved a similar situation in the Government's favor. There, too, the estate sought to deduct the commuted value of a divorced wife's alimony claim, determined actuarially as of the time of decedent's death, even though the former wife actually remarried before the estate filed its tax return. The court reasoned that the governing statute, the predecessor of our present § 2053, contemplated a deduction only for amounts that do not pass by "gift" upon death. This purpose would not be served, in the court's view, by permitting a deduction for claims against an estate that were obviously unenforceable when the estate tax return was filed, even though the claims had vitality when decedent had died. Thus, the court limited the deduction for claims against estates to the amount of the claim established on the date the estate tax return is filed. *Id.* at 375. Plaintiff now suggests that, because the wording of the present statute differs from that of its predecessor, the cases are distinguishable. Specifically, the prior statute referred to amounts "allowed" under state law, while our § 2053 speaks of amounts "allowable." We, however, think the statutes are not substantially different, at least not with respect to the issue of fixing the time for valuating claims. On that point, which is the central issue in this case, *Shively* is apposite.

Plaintiff's more forceful argument is to urge upon us the "general rule" announced in *Ithaca Trust Co. v. United States*, 279 U.S. 151, 49 S.Ct. 291, 73 L.Ed. 647 (1929), that "[t]he estate so far as may be is settled as of the date of the testator's death." *Id.* at 155, 49 S.Ct. at 291. At issue there was the value, as a deduction from the gross estate, of a remainder in property bequeathed to charity at the conclusion of a life estate. All parties realized that the amount of the charitable deduction would be the market value of the property diminished by the widow's interim interest, but the date of valuation was contested. Since the widow had actually died within 6 months of decedent's own death, the executor sought to deduct the value of the remainder as it was in fact received by the charity. The Government, on the other hand, limited the deduction to the value of the property less the value of the widow's remaining life expectancy when decedent died. The Court agreed. Plaintiff now argues that the Court's reasoning in *Ithaca Trust* that net estates are properly valued as of the taxable event, decedent's death, requires that we determine actuarially the value of Marjorie's claim against Chesterton's estate on the date he died, regardless of the sum that the estate paid in fact.

*Shively* and *Ithaca Trust* are not the only precedents on the question, but mere numbers of lower court decisions are not necessarily decisive. Insofar as the Second Circuit's opinion in *Shively* is arguably inconsistent with the Supreme Court's statement of general principle in *Ithaca Trust*, it brings to mind another Supreme Court opinion. *United States v. Mason*, 412 U.S. 391, 93 S.Ct. 2202, 37 L.Ed.2d 22 (1973). Our court had held in that case, 461 F.2d 1364, 198 Ct.Cl. 599 (1972), that the United States breached its fiduciary duty toward the Osage Indians for failing to challenge Oklahoma's inheritance tax assessment on Indian land. We believed that recent circuit court decisions had placed in doubt the vitality of the Supreme Court's prior decision in *West v. Oklahoma Tax Commission*, 334 U.S. 717, 68 S.Ct. 1223, 92 L.Ed. 1676 (1945), which was directly in point and upon which the fiduciary relied in paying the tax without objection. The Supreme Court reversed, holding that the United States had not breached its fiduciary duty by declining to anticipate that the precedent might be overruled. Enroute to this conclusion, the Court expressed its difficulty in comprehending how decisions by lower courts can ever undermine the authority of a Supreme Court decision. 412 U.S. at 396–97, 93 S.Ct. 2202. A further difficulty with *Shively* is that the opinion does not contain any clear-

ly stated reason why *Ithaca Trust* is not decisive though the latter case is cited in *Shively* and heavily relied on in a dissent. We proceed cautiously today, therefore, lest we be unduly influenced by other courts to curtail impermissibly the authority of *Ithaca Trust.*

We are confident, however, that we will not transgress the *Mason* rule, even by reaching a different result from *Ithaca Trust*, because it is our considered judgment that the situation presented here and that before the Court in *Ithaca Trust* are different. *Ithaca Trust* involved the valuation of a remainder in property given to charity. The Court had the benefit in its inquiry of Treas.Reg. 37, Art. 53 (Rev.1921), which declared that the amount of the charitable deduction based on a gift of a remainder "is the value, at the date of the decedent's death, of the remainder interest * * *." See also *United States v. Provident Trust Co.*, 291 U.S. 272, 281, 54 S.Ct. 389, 390, 78 L.Ed. 793 (1934). Although the *Ithaca Trust* opinion contains language broad enough to embrace other types of disbursements, its rule, designed to apply to charitable gifts, is not necessarily applicable to other estate tax deductions. The contemporary regulation concerning deductible claims, for example, stated:

> * * * It must appear in every case either that payment of the item has been made, or that such payment is clearly contemplated. * * * Where the disbursement has not been made, the item may be entered for deduction where the amount is certain, and it appears satisfactorily that it will be paid. No deduction may be taken upon the basis of a vague or uncertain estimate. Where an uncertain or contingent liability, not allowed as a deduction, becomes fixed, and payment is made, the remedy is a claim for refund of the excess tax. [Treas.Reg. 37, Art. 38 (Rev.1921).]

We should not presume that the Court would have fashioned the same rule for deductions under this regulation that it did for charitable deductions. Our research reveals no instance, moreover, in which the Supreme Court itself relied upon *Ithaca Trust*, except in connection with the estate tax deduction for charitable gifts. *E. g., United States v. Provident Trust Co., supra.*

Furthermore, the Court never hesitated to limit *Ithaca Trust* to testamentary gifts that the charitable donee was reasonably certain, judging from the time of decedent's death, to receive eventually. But where the Court was not shown that such a future interest would ever actually pass to the charity, the Court declined to invoke *Ithaca Trust*, and disallowed any deduction. *E. g., Humes v. United States*, 276 U.S. 487, 48 S.Ct. 347, 72 L.Ed. 667 (1928) (gift of property that would pass to charity upon 15-year-old life tenant's death without issue and before age 40 too speculative a basis for estate deduction); *Commissioner v. Estate of Sternberger*, 348 U.S. 187, 75 S.Ct. 229, 99 L.Ed. 246 (1955) (similarly, a charitable bequest contingent upon decedent's 27-year-old daughter's dying without descendants that survive her mother); *Merchant's National Bank of Boston v. Commissioner*, 320 U.S. 256, 64 S.Ct. 108, 88 L.Ed. 35 (1943) (trustee's discretion to invade corpus for life tenant's "happiness" renders too indefinite any valuation of what a charitable remainderman might actually receive); *Henslee v. Union Planters Bank*, 335 U.S. 595, 69 S.Ct. 290, 93 L.Ed. 259 (1949) (same result where trustee could reach corpus for life tenant's "pleasure, comfort and welfare"). On the whole, it appears that *Ithaca Trust* has not been treated as the origin of an expanding concept.

The Supreme Court has not had the occasion to decide whether to apply to claims against estates the same analysis that it has to charitable deductions, but several lower courts have reached that question. In *Jacobs v. Commissioner*, 34 F.2d 233 (8th Cir. 1929), decedent's widow elected to receive the net income for life from $250,000 of decedent's estate in lieu of her rights, under an antenuptial agreement, to $75,000 outright. The estate, nevertheless, sought to deduct the $75,000 as a claim against it existing at the time decedent died. The court disallowed the deduction, reasoning that the statute contemplated deductions

for claims that would actually be paid from the estate. Whereas the widow had never claimed any amount from the estate under the antenuptial agreement, so that the gross estate was never decreased on that account, the court concluded that no deduction from tax was warranted. *Id.* at 235. The court commented:

> In our opinion a claim without a claimant was not in the mind or purpose of Congress when the words "claims against the estate" were written into the revenue statutes. * * * It was, in our opinion, claims presented and allowed or otherwise determined as valid against the estate and actually paid or to be paid that Congress had in mind, when it provided for the deduction from the gross estate of "claims against the estate" in determining the value of the net estate for taxing purposes.

The court observed, in response to the executor's argument that *Ithaca Trust* compelled a different result, that *Ithaca Trust* dealt with gifts to charities under paragraph 3 of the statute, not paragraph 1 which authorizes deduction for claims. These claims, like funeral expenses and administration costs which arise only after death, were intended by Congress to be determined in the course of an orderly administration of an estate. *Id.* at 236. "* * * [The Supreme Court] has not said that the deductions authorized by paragraph (1) * * * must be determined solely by the facts and conditions existing on the day of the death, and we are confident that court will never say so in view of the provisions of paragraph (1)."

If the Eighth Circuit's prophecy has come to pass, as it appears to have, it may well be for the reason the court advanced, that deductible claims more closely resemble funeral and administration expenses, necessarily valued after death, than they do gifts to charities. See also *Empire Trust Co. v. Commissioner*, 94 F.2d 307 (4th Cir. 1938), for a similar result based, more narrowly, on the fact also present in *Jacobs*, that the widow's claim was not deductible because it supplanted her nondeductible dower interest.

In *Commissioner v. State Street Trust*, 128 F.2d 618 (1st Cir. 1942), the First Circuit followed *Jacobs* in limiting a deduction to the amount determinable in light of events occurring after decedent's death. The widow there had compromised her claim to alimony for an amount of cash and future payments whose commuted value was less than that of her original claim. The statute establishing a deduction for sums allowed as claims under local law would not permit, in the court's view, a deduction larger than the maximum amount the estate would ever have to pay. *Id.* at 622.

Our court realized that *Ithaca Trust's* approach was not universally applicable in *Schiffman v. United States*, 51 F.Supp. 728, 100 Ct.Cl. 248 (1943). Upon that decedent's death, his estate became liable as one among several guarantors of certain corporate debts, then in default and likely to be foreclosed. The executors deducted from the gross estate the amount of the creditor's claim against the estate, on a theory similar to that advanced by plaintiffs today, and filed the estate return. After negotiations, however, the creditor and the other guarantors reached a refinancing agreement, which did not call for any payments from the estate. We denied the estate tax deduction. Although we did not refer to *Ithaca Trust*, we stated our views on the subject of the deductibility of claims in language that applies to the present case as well:

> * * * The measure of the estate tax is not simply the value of assets less liabilities of the decedent at the time of his death. That is only the starting point. What subsequently happens with reference to debts of and claims against the decedent may be important. The statute makes the Estate a separate and distinct taxable entity * * *. The Estate is the taxpayer and the statute requires it to pay a tax upon the net value of the estate which it receives as a transfer by death, after deducting the amount of *bona fide* debts and claims "as are allowed by the laws of the jurisdiction

\* \* \* under which the estate is being administered," and which it is entitled to keep and distribute to the beneficiaries \* \* \*. [*Id.*, 51 F.Supp. at 732, 100 Ct.Cl. at 257.]

In *Schiffman*, we held that the amount of a claim against the estate that was paid by another, so that the sum would remain available to beneficiaries of the estate, could not be deducted. We think that this position is still correct, supported by the weight of the law as it has developed, and we adhere to it.

Thus, having supplied the reason that *Shively* does not state, we disagree with plaintiff's contention that *Shively* was wrongly decided. We can now respond to plaintiff's remaining arguments briefly. First plaintiff draws various distinctions between its own circumstances and those presented in the cases we have discussed. The result in *Jacobs*, according to plaintiff, rests on the fact that the estate contested the claim, rendering its liability contingent and not subject to definite valuation. So, too, plaintiff says, was the case in *Schiffman*, where the estate assumed merely a secondary liability as guarantor of the debt of another. We can concede that there exist some distinctions in fact, but fail to see how these made a difference. The central question in each case was to settle upon the appropriate date for valuing claims, and the outcome in each was to extend the valuation date beyond the date of decedent's death, without discernible regard for the characteristics of the particular claims in controversy. Lastly, plaintiff finds support for its position in several Tax Court decisions, especially *Estate of Lester*, 57 T.C. 503 (1972). Whether this decision is in fact inconsistent with the foregoing is unnecessary to decide, because we believe that the Tax Court's present view is reflected in *Estate of Hagmann*, 60 T.C. 465 (1973), which follows *Jacobs* and *Shively* in disallowing a deduction for otherwise valid claims that were not filed against the estate within the 6-month period required under state probate law. Plaintiff laments that *Hagmann*, also, was in error for departing from *Ithaca Trust*. We are of the contrary opinion, that this case like the others cited reflects the current state of the law.

Accordingly, defendant's cross motion for summary judgment is granted, plaintiff's motion for summary judgment is denied, and its petition dismissed.