ESTATE OF ROBERT A. NESSELRODT, DECEASED, WILLIAM WHITLOCK, ADMINISTRATOR DE BONIS NON, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Estate of Nesselrodt v. Commissioner
Docket No. 24902-82.
United States Tax Court
T.C. Memo 1986-286; 1986 Tax Ct. Memo LEXIS 320; 51 T.C.M. (CCH) 1406; T.C.M. (RIA) 86286; July 14, 1986. Harold D. Jones, for the petitioner. Nancy W. Hale, for the respondent. GOFFE
MEMORANDUM FINDINGS OF FACT AND OPINION GOFFE, Judge: The Commissioner determined a deficiency in petitioner's Federal estate tax in the amount of $151,823.42. After concessions, the issues for decision are: (1) whether the decedent's debt to his ex-wife, which was to have been paid in nine annual installments, must be reduced to present value as of the date of death of the decedent; (2) whether a debt for an open account due to Nesselrodt-Campbell Gin Company in the amount of $127,969.88 that has not been paid, and which is barred by Missouri State law due to the failure of the claimant to submit a timely claim to the probate court, is allowable as a deduction to the estate of the decedent; (3) the *323 determination of the fair market value of a 653.56 acre farm located in New Madrid County, Missouri, as of August 23, 1978; and (4) whether petitioner is entitled to special use valuation for the farm under section 2032A. [1]
FINDINGS OF FACT Some of the facts have been stipulated. The stipulation of facts and accompanying exhibits are so found and incorporated by reference. Robert A. Nesselrodt (hereinafter referred to as Robert or the decedent) died intestate on August 23, 1978. F. J. Nesselrodt, Robert's father, qualified as administrator of the estate of Robert A. Nesselrodt (hereinafter referred to as the estate) in the Circuit Court of New Madrid County, Missouri, Probate Division. The notice of letters of administration of the estate was first published on September 15, 1978. F. J. Nesselrodt died on January 7, 1981; William Whitlock was subsequently appointed administrator de bonis non of the estate of the decedent and is the petitioner *324 in this case. Petitioner's address as of the date of filing of the petition was Sikeston, Missouri. On October 14, 1976, the marriage of Robert and Elizabeth Nesselrodt was terminated by divorce. The divorce decree directed Robert and Elizabeth Nesselrodt to perform the terms of a separation agreement dated October 12, 1976. The agreement that was incorporated in the decree required Robert to pay $80,547.01 to Elizabeth Nesselrodt. As of the date of the death of the decedent, the balance of the support to be paid to Elizabeth Nesselrodt totaled $54,000. The balance was to have been paid in nine annual payments of $6,000 on December 1 of each year. Elizabeth Nesselrodt filed a claim with the probate court for the entire unpaid amount, without any discount to allow for the payment schedule. The probate court allowed the claim and entered a judgment for the full amount of $54,000. Petitioner paid the claim with the approval of the probate court. The estate claimed a deduction on the estate tax return in the amount of $54,000 for the debt to Elizabeth Nesselrodt. The estate also claimed a deduction in the amount of $127,969.88 for an account due to Nesselrodt-Campbell Gin *325 Comapny. At the time of death of the decedent, 48 percent of the stock of Nesselrodt-Campbell Gin Company was owned by F. J. Nesselrodt, Robert's father and the original administrator of the estate of the decedent. An additional 48 percent of the stock was owned by Eva Nesselrodt, Robert's mother. No formal claim in any amount for the account due to Nesselrodt-Campbell Gin Company was filed in the New Madrid County probate proceedings of the estate within 6 months of the date of publication of the letters of administration nor was any claim filed up to and including the date of trial. The administrator during the first 6 months of administration, Robert's father, chose not to present the claim in order to avoid the sale of the Nesselrodt farm (discussed below), which was being operated by his grandchildren, including Robert's son and son-in-law. The claim has never been filed as a claim against the estate. However, the present administrator expects the grandchildren to eventually pay the debt. No part of the claimed debt had been paid as of the date of trial. On the date of his death, the decedent owned a farm (hereinafter referred to as the farm or the Nesselrodt farm) in *326 New Madrid County, Missouri, consisting of 653.56 acres, more or less, described as all of Section Seven (7), Township Twenty-Three (23) North, Range Thirteen (13) East of the Fifth Principal Meridian. On the decedent's estate tax return, the estate reported the fair market value of the 653.56-acre farm as $457,492, or $700 per acre. Approximately 604 acres, or approximately 92 percent, of the Nesselrodt farm is cropland. There are no improvements on the property other than two wells, only one of which is operable. The highest and best use of the Nesselrodt farm on August 23, 1978, was as a farm used for the production of corn, soybeans, wheat, and cotton. The Nesselrodt farm is located approximately two miles southwest of the intersection of Missouri State routes E and W. The Nesselrodt farm is bounded on both the north and on the south by county highways; a county highway splits the farm in a north-south direction and connects the county highways which bound the tracts on the north and south. All of these county highways are gravel. There are several unpaved field roads throughout the farm. Access to portions of the farm were from a gravel road that is impassable at certain *327 times of the year. The surrounding area is comprised primarily of farmland, most of which is either subject to floods or subject to periodic protracted wetness. The Nesselrodt farm is located one-half mile from the nearest major drainage ditch and is considered to be land that is subject to wetness rather than flood land. Land that is subject to wetness is inherently more valuable than flood land, assuming that the soil quality is similar. The farm is not level and contains many ditches and pockets of land where water stands after rain or during certain times of the year. There are two or three cypress trees, which are native to swamps, on the property. The soil of a farm is a primary factor in determining productivity. Although loam soil is generally more valuable, clay soil and produce almost as well as loam soil if well-drained. The soil on the Nesselrodt farm is basically clay or gumbo, soil that is swampy part of the year and that cracks when it gets dry. The soil and the lack of the access to portions of the farm at certain parts of the year limit the property to only one crop each year. The crop yields are fair to average for wheat and grain sorghum and below average *328 for cotton yields. The value of the crops growing on the farm as of Robert's death was $157,488.93. The price of property in the area of the farm increased at a rate of between 8 and 10 percent per year between 1976 and 1980. Generally, properties containing less than 100 acres cost more per acre than the properties in excess of 100 acres. Other factors such as soil, drainage, and location are, however, more critical to a determination of value than the size of the parcel. Methods used to value real property include income-capitalization approach, the reproduction-cost minus depreciation approach, and the comparative sales or market data approach. The income-capitalization approach tends to yield unrealistically low valuations for farm property while the reproduction-cost approach is inappropriate for land without substantial improvements. The following is a list of comparable local property that was sold between February 16, 1976 and October 30, 1980, a period from approximately two and one-half years before Robert's death to two and one-half years after Robert's death: Date of
Price/
Grantor
Grantee
Sale
Acreage
Acre
Allen-Davis Co.
Batterton
2/16/76
672   $650
Jackson
Roth
4/19/77
80   1,100
Frankle Estate
Schurenberg
[2] 10/30/80
80   702
Robertson
First Royal
3/07/78
155   1,500
Ent.
Minton
Ashley
6/02/78
47   851
Headlight
Lawrence
6/30/78
536   1,650
Land Co.
Bauchman
Little River
7/27/78
601   1,500
Land Co.
Yordy
Little River
7/27/78
726   1,500
Land Co.
Grabiel
Hawkins
8/1/78
213   1,700
Shew
11/20/78
420   1,762
Bailey
Butler
2/02/79
308   1,375
Lewis
Freitag
3/01/79
240   1,400
White
Parker Bros.
4/27/79
383.59
2,170
*329 The returns of three decedents who died in November 1977, December 1977, and March 1980, who owned property in Madrid County, the location of the Nesselrodt farm, were audited and values were agreed for the property in amounts of $510 to $600, $500 to $700, and $900 per acre respectively. The real estate that was valued in the course of these three audits was as close in location to the Nesselrodt farm as were most of the sales set forth above. No request of any type for special valuation of the Nesselrodt farm under section 2032A was filed or made prior to December 11, 1980. Petitioner filed a "motion" for special use valuation of the Nesselrodt farm pursuant to section 2032A which was tendered on June 10, 1982. The "motion" bore only the signature of Harold D. Jones, attorney for the estate. The "motion" did not bear the signatures of the administrator, the administrator de bonis non, or of the persons in being who had an interest in the property, by which those persons signified consent to the application of section 2032A(c) in the event of disposition of the property or failure by the qualified heirs to *330 use the property for the qualified use. Sec. 2032A(d)(2). A Federal estate tax return was timely filed, including extensions of time to file, with District Director, Internal Revenue Service Center, Kansas City, Missouri, on August 22, 1979. The due date of the estate tax return after extensions was August 23, 1979. On July 28, 1982, the Commissioner issued a statutory notice of deficiency to petitioner. As relevant to this opinion, the Commissioner determined that the deduction for the balance due to Elizabeth Nesselrodt under the agreement incorporated in the divorce decree should be limited to $38,146.80, the present value of the nine remaining installments. The Commissioner disallowed the entire claimed deduction for the account due to Nesselrodt-Campbell Gin Company on the grounds that it had not been paid. The Commissioner further determined that the fair market value of the Nesselrodt farm was $817,000, or approximately $1,250 per acre. ULTIMATE FINDING OF FACT The Nesselrodt farm, as of the date of death of the decedent, August 23, 1978, had a value of $975 per acre for a total value of $637,221 for the 653.56-acre farm. OPINION *331 The Commissioner's determination in his statutory notice of deficiency is presumptively correct, and petitioner has the burden of disproving each individual adjustment. Welch v. Helvering,290 U.S. 111 (1933); Rule 142(a). The first issue for decision is whether the deduction by the estate for the debt of the decedent to his ex-wife must be reduced from the amount actually paid to the present value of the debt as of the date of death of the decedent. Neither party to this action contests the validity of the claim nor the precise amount that would have been paid under the agreement as incorporated in the divorce decree. The disagreement is as to the amount deductible by the estate when it chose to pay the full value of the remaining payments immediately rather than either paying Robert's ex-wife over the 9-year period or discounting the amount due to its present value. The value of the taxable estate is determined by deducting from the value of the gross estate such amounts for claims against the estate as are allowable by the laws of the jurisdiction. Sec. 2053(a)(3). The estate deducted the full amount of the *332 debt without discount pursuant to its payment to Elizabeth Nesselrodt, which was approved by the probate court. Section 20.2053-1(b)(2), Estate Tax Regs., provides: The decision of a local court as to the amount and allowability under local law of a claim or administration expense will ordinarily be accepted if the court passes upon the facts upon which deductibility depends. If the court does not pass upon those facts, its decree will, of course, not be followed. For example, if the question before the court is whether a claim should be allowed, the decree allowing it will ordinarily be accepted as establishing the validity and amount of the claim. However, the decree will not necessarily be accepted even though it purports to decide the facts upon which deductibility depends. It must appear that the court actually passed upon the merits of the claim. This will be presumed in all cases of an active and genuine contest. If the result reached appears to be unreasonable, this is some evidence that there was not such a contest, but it may be rebutted by proof to the contrary. If the decree *333 was rendered by consent, it will be accepted, provided the consent was a bona fide recognition of the validity of the claim (and not a mere cloak for a gift) and was accepted by the court as satisfactory evidence upon the merits. It will be presumed that the consent was of this character, and was so accepted, if given by all parties having an interest adverse to the claimant. The decree will not be accepted if it is at variance with the law of the State; as, for example, an allowance made to an executor in excess of that prescribed by statute. On the other hand, a deduction for the amount of a bona fide indebtedness of the decedent, or of a reasonable expense of administration, will not be denied because no court decree has been entered if the amount would be allowable under local law. This regulation provides a presumption of reasonableness for payment of a debt in satisfaction of a court judgment but the evidence must show that the court examined the merits of the claim. Petitioner has presented no evidence that the approval of the probate court, as demonstrated by its judgment approving the distribution of the estate including the payment to Elizabeth Nesselrodt, was based *334 upon a contest of the validity of the claim that would support reliance upon this regulation. Sec. 20.2053-1(b)(2), Estate Tax Regs. We, therefore, cannot rely upon the judgment of the probate court as proof that the claim was a valid claim. The judgment of the probate court is also not conclusive of the amount deductible by the estate if the approved payment is in excess of the amount of the claim that is allowable under local law. Sec. 20.2053-1(b)(2), Estate Tax Regs. Relevant portions of section 20.2053-4, Estate Tax Regs., provide: The amounts that may be deducted as claims against a decedent's estate are such only as represent personal obligations of the decedent existing at the time of his death, whether or not then matured, and interest thereon which had accrued at the time of death. * * * Only claims enforceable against the decedent's estate may be deducted. * * * Respondent contends that the estate may not deduct an amount in excess of the present value of the debt, despite the judgment *335 of the probate court, as the claim enforceable against the estate under Missouri State law was limited to the commuted value of the debt regardless of the judgment of the probate court. The amount that can be deducted is generally determined as of the time of death. Ithaca Trust Co. v. United States,279 U.S. 151 (1929); Commissioner v. Estate of Shively,276 F.2d 372 (2d Cir. 1960); Estate of Chesterton v. United States,551 F.2d 278 (Ct. Cl. 1977). Deductibility is not conditioned upon a claim's allowance by a local court, but rather upon its enforceability under local law. Smyth v. Erickson,221 F.2d 1, 3 (9th Cir. 1955). The applicable provisions under Missouri law for the payment of a debt payable in installments over a period of time are found in Mo. Ann. Stat. sec. 473.383 (Vernon 1956): The court may allow any claim filed against an estate, which is payable at a future day, at the then present value thereof, or the court *336 may order the executor or administrator to retain in his hands sufficient funds to satisfy the same upon maturity; or if the heirs, devisees, or legatees offer to give bond to a creditor for the payment of his claim according to the terms thereof, the court may order the bond to be given in satisfaction of such claim. Under this statute, the court is allowed to authorize payment of a lump sum in satisfaction of the claim, limited, however, to the present value of the claim. Otherwise, the claimant must await payment according to the terms of the obligation. Although a claimed deduction may be rendered worthless or devalued by events occurring before the due date of the estate tax return, Estate of Chesterton v. United States,supra;Commissioner v. Estate of Shively,supra, petitioner cites no authority that permits aggrandizement of the claim beyond the commuted value that may be paid pursuant to Missouri State law and the Commissioner's regulations. Gratuitous approval by the probate cour of payment by the administrator to a claimant in an *337 amount greater than that permitted by State law does not increase the permissible deduction under section 2053. Sec. 20.2053-1 (b)(2), Estate Tax Regs. A limitation of the deduction to the commuted value established by the Commissioner's actuarial tables is appropriate. Estate of Lester v. Commissioner,57 T.C. 503 (1972). Petitioner has failed to prove its entitlement to a deduction in excess of the amount allowed by respondent. Rule 142(a). The second issue for decision is the disallowance of the deduction for the claim of Nesselrodt-Campbell Gin Company in the amount of $127,969.88 against the estate of the decedent. Missouri law provides: [A]ll claims against the estate of a deceased person * * *, whether due or to become due, absolute or contingent, liquidated or unliquidated, founded on contract or otherwise, which are not filed in the probate division * * * within six months after the first published notice of letters testamentary or of administration, are forever barred against the estate, the personal representative, the heirs, devisees and legatees of the *338 decedent. * * * [Mo. Ann. Stat. sec. 473.360 (Vernon 1986 Supp.).] Where no claim for a debt due from the decedent is filed in the probate proceeding prior to the date upon which the claim becomes barred under State law, then generally no deduction for the claim is allowable to the estate. Estate of Hagmann v. Commissioner,60 T.C. 465 (1973), affd. 492 F.2d 796 (5th Cir. 1974); sec. 2053(a)(3). Missouri law does permit payment of a debt of an estate for which no claim was filed during the 6-month period after publication if all interested parties consent, despite the fact that enforcement of the debt is barred. Mo. Ann. Stat. sec. 473.433[4] (Vernon 1986 Supp.). No payment of the claim at issue has been made up to the time of trial, however, nor has petitioner presented evidence that all interested parties would consent should the administrator attempt to pay the claim at such a late date. The first notice of letters of administration was published on September 15, 1978. The administrator of the estate, who was also, with this wife, an owner *339 of 96 percent of the creditor, Nesselrodt-Campbell Gin Company, chose not to preset the claim representing the debt owed by the decedent to the company within the 6-month period after publication of the notice. The stated reason is that payment of the debt would bankrupt the estate requiring the sale of the Nesselrodt farm thus making it impossible for Robert's children (the original administrator's grandchildren) to continue to operate the farm. Petitioner urges that payment of the debt may yet occur when and if the estate becomes solvent. Although it is true that all of the interested parties may yet agree to pay the debt at a later date, the claim is no longer legally enforceable against the estate under Missouri law and is, therefore, not an allowable deduction under section 2053(a)(3). Estate of Hagmann v. Commissioner,supra.
The third issue for decision is the fair market value of the Nesselrodt farm as of the date of death of the decedent. The estate claimed a value of $457,492 while respondent determined a value of $817,000. Relevant portions of section *340 20.2031-1(b), Estate Tax Regs., provide: The value of every item of property includible in a decedent's gross estate * * * is its fair market value at the time of the decedent's death * * *. The fair market value is the price at which the property would change hands between a willing buyer and a willing seller, neither being under any compulsion to buy or to sell and both having reasonable knowledge of relevant facts. The fair market value of a particular item of property includible in the decedent's gross estate is not to be determined by a forced sales price. Nor is the fair market value of an item of property to be determined by the sale price of the item in a market other than that in which such item is most commonly sold to the public, taking into account the location of the item wherever appropriate. * * * All relevant facts and elements of value as of the applicable valuation date shall be considered in every case. * * * Valuation issues are inherently imprecise and capable of resolution only by a Solomon-like pronouncement. Buffalo Tool & Die Mfg. Co. v. Commissioner,74 T.C. 441, 452 (1980); Messing v. Commissioner,48 T.C. 502, 512 (1967). *341 We must, however, apply the facts and circumstances test of section 20.2031-1(b), Estate Tax Regs., and establish the fair market value of the Nesselrodt farm, as the parties have failed to agree on the appropriate price per acre. The fair market value of property on any given date is a factual question and requires consideration and weighing of all relevant evidence in the record. Mauldin v. Commissioner,60 T.C. 749, 759 (1973); Kaplan v. Commissioner,43 T.C. 663, 665 (1965). The Nesselrodt farm was subjected to three expert appraisals based primarily on the market data/comparative sales approach, resulting in valuations per acre of $750 (petitioner's expert), $1,050 (respondent's independent expert), and $1,270 (respondent's in-house expert) per acre. Petitioner's expert was thoroughly familiar with local facts and circumstances affecting the sales price of each of the comparable sales. Respondent's experts, although well-versed in matters of record, were at times unaware of local data that required adjustment of the sales price of comparable tracts. *342 Petitioner's expert used seven sales of local property as comparables to determine the appropriate fair market value of the Nesselrodt farm of 653.56 acres. Respondent's independent expert used eight comparable sales to determine the value of the Nesselrodt farm as $1,050 per acre. Respondent's in-house expert used seven comparable sales to determine the valuation of $1,270 per acre placed by him upon the Nesselrodt farm. Only two of the sales of local property occurring within a period shortly before or after the date of Robert's death, August 23, 1978, were used by all three experts: the Bailey-Butler sale and the Grabiel-Hawkins sale. The adjusted values placed upon these two properties by the three experts were as follows: Comparable
Sales
Petitioner's
Respondent's
Respondent's
Sales
Price
Expert
Independent Expert
In-House Expert
Bailey-Butler
$1,375
$756
$1,063
$1,196
Grabiel-Hawkins
$1,700
748
1,000
1,300
The sales price for the Bailey-Butler sale on February 2, 1979, was adjusted downwards by each of the experts but in varying amounts: 45 percent by petitioner's expert, 23 percent by respondent's independent expert, and *343 13 percent by respondent's in-house expert. Adjustment factors particular to the valuation process included: a sale of a contiguous tract only one month before for $950 per acre; an inflated price balanced by owner financing at below-market rates; slightly better drainage and soil than the farm; and its location on paved U.S. Highway 62 rather than gravel roads. Similarly, the Grabiel-Hawkins sales price was adjusted downwards as follows: 56 percent by petitioner's expert, 33-1/3 percent by respondent's independent expert, and 23.5 percent by respondent's in-house expert. Factors considered included: improvements consisting of a tenant house, an irrigation well, and grain bins; better drainage and soil; the sale of a one-fourth interest one year before for $800 per acre; the sale of a nearby 40-acre property within 2 months of the Grabiel-Hawkins sale at $851 per acre; and the fact that Hawkins sold, in part, to avoid a partition suit. Each of the three experts adjusted the sales price per acre on each of the properties selected as comparable sales to account for differences between the compared property and the Nesselrodt farm. Examples of factors requiring adjustment included: *344 different times of sale, different soil or drainage conditions, reasons for the sale (whether voluntary or forced), public nature of sale versus sealed bid auction, the relationship of the buyer to the seller (unrelated third party or, conversely, family or the same entity under a different name), accessibility, improvements, and the effect of owner financing. Each of the experts used differing groups of factors and applied different discount rates to account for the variations between the comparable and the Nesselrodt farm. We have carefully examined all of the facts and circumstances before us as set forth by the expert witnesses and their reports and conclude that each of the reports has deficiencies. Petitioner's expert made substantial adjustments to each of the comparable sales which do not, in all instances, appear justified. Respondent's experts, however, were not fully conversant with local conditions and circumstances and failed to allow for the unusual nature of some of the comparable sales. Upon due consideration of the entire record, we find that the value of the Nesselrodt farm as of the date of death of the decedent, August 23, 1978, was $975 per acre for a total *345 value of $637,221 for the 653.56-acre Nesselrodt farm. The final issue for decision is whether the estate is entitled to special use valuation for the Nesselrodt farm under section 2032A. A preliminary requirement for such a valuation is the filing of a timely and complete election. The election must be made not later than the time prescribed by section 6075(a) for filing the estate tax return and must include an agreement, signed by each person in being who has an interest in the property to be specially valued in which the heirs consent to the imposition of additional estate tax upon disposition or failure to use the property in a qualified manner. Sec. 2032A(a)(1)(A), (B); sec. 2032A(b)(1), (2); sec. 2032A(d)(1), (2). Under section 6075(a), the estate tax return was due to be filed within 9 months after the date of the decedent's death or, in this case, on May 23, 1979. A request for extension of filing was requested and granted. The due date of the return, after extension, was August 23, 1979, a date which was significantly before the first communication of any sort, dated December 11, 1980, indicating *346 a wish to elect special use valuation. No consent agreement has been filed up to an including the date of trial. Petitioner concedes that the estate failed to file a timely and complete election under section 2032A on or before August 23, 1979, but contends that the delay was due to its reliance upon an expected valuation for the farm in approximate agreement with the values determined in the audits of other taxpayers who had died at approximately the same time and who had owned nearby property. Petitioner's hope for a valuation in line with the values placed upon properties owned by other decedents does not, however, excuse failure to comply with the statutory requirement for a timely and valid election. As no valid election was timely filed, petitioner is not entitled to special use valuation for the Nesselrodt farm. [3]Sec. 2032A. *347 A number of items have been conceded by petitioner. To reflect the foregoing, Decision will be entered under Rule 155.
Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954, as amended and in effect for the relevant years, and all rule references are to the Rules of Practice and Procedure of this Court.↩
2. This sale occurred in 1977 but was not recorded until 1980.↩
3. Petitioner's reliance upon the changes made to sec. 2032A by sec. 421(k)(5)(B) of the Econmic Recovery Tax Act of 1981, Pub. L. 97-34, 95 Stat. 306, 314, and sec. 104(b)(4)(B) of the Technical Corrections Act of 1982, Pub. L. 97-448, 96 Stat. 2379, 2382, as permission for its belated election is misplaced. A preliminary requirement for the application of the liberalized provisions set forth by this statute was an election date that had expired no later than July 28, 1980, a date one year before the date upon which this estate was to have filed its election and consent agreement. See Estate of McCoy v. Commissioner,T.C. Memo. 1985-509↩.